### NEYENS v. WORTHINGTON.

1. CONTRACTS — SIMULTANEOUS WRITINGS — CONSTRUCTION TO-
   GETHER.

   All writings executed at the time of entering into a contract
   and relating to the transaction are to be construed together.

2. CORPORATIONS — FOREIGN CORPORATIONS — DOING BUSINESS IN
   STATE—WHAT CONSTITUTES.

   The entering into a contract in this State by a foreign corpora-
   tion, by which it authorizes a citizen of this State to estab-
   lish and further its business, to look after business already
   established, to sell its goods, and to make similar contracts
   with others on its behalf, constitutes "doing business" with-
   in this State within the prohibition of Act No. 34, Pub. Acts
   1903, § 7, and no action can be maintained upon such con-
   tract by the corporation or its assignee with notice if the
   corporation has not been admitted to do business in this State
   under the statute.

3. SAME—INTERSTATE COMMERCE.

   Such contract is not an agreement relative to interstate com-
   merce.

4. BILLS AND NOTES—ACTION—BONA FIDE HOLDER — EVIDENCE—
   SUFFICIENCY.

   In an action on a promissory note given to one not entitled to
   maintain suit in the courts of this State, evidence examined,
   and held, sufficient to go to the jury on the question whether
   plaintiff was a bona fide holder.

Error to Livingston; Miner, J.   Submitted April 15,
1907.   (Docket No. 116.)   Decided January 6, 1908.

Assumpsit by Leonard M. Neyens against John W.
Worthington on a promissory note.   There was judg-
ment for defendant on a verdict directed by the court,
and plaintiff brings error.   Reversed.

*Arthur H. Covert,* for appellant.

*Shields & Shields,* for appellee.

McALVAY, J.   This is an action in assumpsit upon a promissory note given by defendant to Acme Food Company, plaintiff's assignor, August 12, 1904.

"$100.00.      OAK GROVE, MICHIGAN, August 12, 1904.

"On or before six months after date, for value received, I promise to pay to the Acme Food Company (a corporation organized and existing under the laws of the State of Illinois) or order, the sum of One Hundred and no-100 Dollars, with interest at the rate of seven per cent. per annum from date hereof until paid.

"Payable at the City National Bank, Lansing, Michigan. The indorsers, sureties and guarantors severally waive presentment for payment, protest, notice of nonpayment and diligence, and agree that time of payment may be extended without affecting their liability.

"JOHN W. WORTHINGTON."

Indorsed on back, "Acme Food Company, by Geo. H. Simpson, Treasurer."

The parties also entered into the following agreement:

"This contract made and entered into this 12th day of August, 1904, by and between the Acme Food Company (incorporated), of Chicago, Illinois, as party of the first part, and John W. Worthington of Oak Grove, and State of Michigan, as party of the second part.

"Acme Food Company, party of the first part, hereby agrees to furnish John W. Worthington, party of the second part, Acme Stock and Poultry Food at the reduced rate herein specified, to wit:

"It is hereby agreed that the party of the first part is to furnish to the party of the second part Acme Food in 3-lb. and 5-lb. packages as well as 10-lb. pails, at a discount of 15 per cent. from the list prices, which are as follows: (Giving schedule of prices.)

"And also to furnish Acme Food in 25-lb. pails, 50-lb. quarter barrels, 100-lb. half barrels, and 200-lb. barrels in any quantity and to be shipped in such quantities of the above sizes as he may order at $5.00 per cwt. f. o. b. Chicago, Illinois, and to also furnish Acme Poultry Food at a discount of 15 per cent. from the list prices which are as follows: (Giving schedule of prices.)

"It is also agreed that the party of the second part agrees to sell Acme Food when selling to dealers and sub-

agents at the following prices: (Giving schedule of prices.)

"Acme Poultry Food: (Giving schedule of prices.)

"And when any of said goods are sold at retail they are to be sold at the regular prices covering same which are as follows: (Giving schedule of prices.)

"The party of the second part is also instructed to sell Acme Food strictly on its merits, as guaranty provides, and to warrant and guarantee said food to each customer if used and fed according to the printed directions. And we agree in all cases where your customers have fed the food as aforesaid, and furnish us with their affidavit on the printed form furnished by us, to ship to you free of charge, f. o. b. on the cars at your station, as many pounds, not exceeding 500 lbs. to a single customer, as shall appear by such affidavit to have been used by such customer. It is understood that this warranty shall cover in each case only the first sale made to each individual customer. All blank spaces in said affidavit must be filled in ink before the same is executed, and the party executing the same must clearly and explicitly state that he has fed the said Food in accordance with our instructions, detail the manner of feeding same, and that his stock has derived no benefit therefrom, otherwise this warranty is of no force or effect. Blank affidavits to be furnished to the party of the second part upon application.

"It is further agreed that the party of the first part is to furnish 50 booklets with each 2,000 pounds of Acme Food or at that pro rata; such other advertising matter as deemed good business to party of the first part.

"It is further agreed by and between the parties of the first part that they will not sell or ship Acme Food or Poultry Food into the county of Livingston, State of Michigan, without the consent or order of the party of the second part during the lifetime of this contract.

"Party of the second part agrees to look after and to attend to the needs in the Acme Food line of customers already established in the county of Livingston by the Acme Food Company, or agrees to use his best efforts towards the establishing and furthering the Acme Food business in the above named county, and agrees to forfeit and waive all rights under this contract, if he should cease or stop working at the same for a period of ninety (90) days or more, without first obtaining consent from the first party so to do, or unless prevented by sickness or other good cause.

"It is also agreed that the party of the first part will not assign during the term of this contract to exceed two-thirds (⅔) of the territory of the several States of the United States.

"Now This Indenture Witnesseth: That for and in consideration of fifteen hundred dollars ($1,500) to us in hand paid, the receipt of which is hereby acknowledged, we agree to furnish Acme Stock and Poultry Food at the reduced prices as aforesaid, to the said John W. Worthington, party of the second part, or his assigns, for the period of fifteen (15) years from date.

"For full performance of our respective parts, we bind ourselves, our heirs, administrators, executors and assigns.

> "ACME FOOD COMPANY.
> (Signature) "GEORGE H. SIMPSON.
> (Signature) "JOHN W. WORTHINGTON.
> "Witness B. J. McCracken."
> (Seal).

Said Acme Food Company also executed and delivered to defendant the following appointment and agreement.

> "CHICAGO, ILL., August 12, 1904.
> "OFFICE OF ACME FOOD COMPANY,
> "110 La Salle Street.

"The Acme Food Company hereby appoints John W. Worthington of Oak Grove, an agent for the county of Livingston, State of Michigan, for the following purposes, to wit:

"*First*, the Acme Food Company agrees to pay to John W. Worthington a commission of 50 per cent. (50%) on all county contracts made by him and accepted by Acme Food Company, of counties not already contracted by the Acme Food Company, said payment to be made from the proceeds of such contracts.

"*Second*, the same commission is to be allowed John W. Worthington whether the contract is made by him directly or whether through his influence the customer deals directly with the Acme Food Company.

"*Third*, it is understood that when the customer has been interested or solicited by more than one agent, or in case the said Acme Food Company may suspect that an agent other than the one credited by the purchaser may be entitled to the commission, then the said Acme Food Company shall hold the proceeds of all such contracts (as well

as all pending contracts) for such time as may be required by it to make proper adjustments and divisions of commissions pertaining thereto.

[Seal]      (Signed)      "ACME FOOD COMPANY,
"By GEORGE H. SIMPSON, Treasurer."

All these writings were made, executed, and delivered at the same time as part of one transaction, at the residence of defendant near Oak Grove, Michigan.   The note in suit is one of 15 notes of equal amount made and delivered to the Acme Food Company at the same time as a part of said transaction as the consideration mentioned in said contract.

Defendant under the plea of the general issue gave notice that he would show the facts above recited and prove that the Acme Food Company was a foreign corporation which had not complied with the Michigan statute and was not entitled to do business in this State, or bring suits upon contracts made therein; that the notes had been procured by fraud and misrepresentation and were void and without consideration; and that plaintiff was not a bona fide holder of the note sued upon.

The plaintiff's case, except the computation of the amount due upon the note, consisted of the note itself and the deposition of George H. Simpson, treasurer and manager of the Acme Food Company, and the person who negotiated the transaction between the parties at the time the note in suit was given and as far as this record shows, all of the prior transactions between said company and the defendant.   Plaintiff did not testify in the case.

From the deposition of plaintiff's witness Simpson, it appears that defendant in July, 1904, gave the Acme Food Company a note for $1,800 under an agreement to purchase 30,000 pounds of Acme Food to be shipped about September 1, 1904.   This agreement was canceled, and the note surrendered when the contract and notes of August 12, 1904, involved in this suit, were executed and delivered.   It also appears from Simpson's deposition that—

" Mr. Worthington [the defendant] had handled Acme

Food prior to the time of giving this contract. He had first bought goods for his own use about two or three years before, and then had been acting as dealer or agent for something over a year, buying the goods at wholesale. I mean a year prior to the giving of this note. He had handled the Acme Food in considerable quantities."

It further appears that Simpson saw defendant, after the note in suit was given, at a fair in Pontiac, Michigan, in September, 1904, when the defendant expressed himself as well pleased with the contract. The court directed a verdict for defendant on the ground that the Acme Food Company was carrying on business within this State contrary to law, and that there was no evidence in the case to show that plaintiff was a bona fide holder of the note. Plaintiff asks for a reversal of the judgment entered upon such directed verdict, having assigned error upon this direction of the court. It is admitted that the Acme Food Company is a foreign corporation, and that it has not complied with the requirements of the statute in question.

Two questions are presented upon this record:

(1) Was the court in error in holding that plaintiff's assignor was carrying on business in this State contrary to law?

(2) Was the court in error in holding that there was no evidence in the case that would warrant the submission of the question to the jury upon the proposition that plaintiff was a bona fide holder of the note?

The material provisions of this statute in force at the time of this transaction necessary to be considered were as follows:

"It shall be unlawful for any corporation organized under the laws of any State of the United States (except the State of Michigan) or of any foreign country to carry on its business in this State unless it shall first have filed and recorded in the office of the secretary of State a certified copy of its charter or articles of incorporation and have filed evidence of appointment of an agent in this State to accept service of process; and have paid to the secretary of State the requisite filing and recording fees,

and franchise' fees in amount and to be determined, etc.
* * *

"No foreign corporation subject to the provisions of this act shall maintain any action in this State upon any contract made by it in this State after the taking effect of this act, until it shall have fully complied with the requirements of this act and procured a certificate to that effect from the secretary of State." Act No. 34, Pub. Acts 1903, § 7.

By the provisions of the statute above quoted it is unlawful for a foreign corporation "to carry on its business in this State" without complying with its requirements. As the law then stood contracts of a delinquent corporation made within the State were not void but such corporation was deprived of the right to maintain any action thereon. Whether the Acme Food Company was within the prohibition of the act depends upon our construction of the agreement made with defendant. Construing the contract and the appointment as agent together as parts of one transaction we find that a valid agreement was entered into between the parties.

By this agreement defendant was authorized, among other things,—

(1) To establish and further the Acme Food business in Livingston county, Michigan.

(2) To look after and attend to the needs of the Acme Food line of customers already established.

(3) To sell at wholesale to dealers and subagents at certain prices.

(4) To make county contracts (subject to the approval of the company) of counties not already contracted.

For the exercise of all these powers granted, except the last mentioned, he was given exclusive rights in Livingston county, and agreed, during the life of the contract, to use his best efforts to establish and further the Acme Food business, subject to forfeiture of all his rights in case of neglecting this work for more than 90 days. The authority to make county contracts (subject to approval) was the greatest and most desirable of all the rights

acquired by defendant. These county contracts were similar to the one made with defendant for Livingston county. He was given as his territory in which to solicit such contracts one-third of the counties in the State and his commission was fixed at 50 per cent., to be paid from the proceeds of such contracts.

Defendant paid the Acme Food Company for his rights acquired by these agreements, the sum of $1,500, and his rights were to continue for the term of 15 years.

Our construction is that this was not an agreement relative to interstate commerce. The case does not come within the line of authorities cited by plaintiff where the transactions amounted to sales by foreign corporations through agents of commodities to be manufactured and delivered outside of the State. The authorities hold that such transactions amount to interstate commerce.

"Whatever power may be conceded to a State to prescribe conditions on which foreign corporations may transact business within its limits, it cannot be admitted to extend so far as to prohibit or regulate commerce among the States; for that would be to invade the jurisdiction which, by the terms of the Constitution of the United States, is conferred exclusively upon Congress." Mr. Justice Matthews, concurring, in *Cooper Manfg. Co.* v. *Ferguson,* 113 U. S., at page 736.

These writings were not a sale of manufactured articles nor were they simply an agreement to sell. There is a conflict in the authorities as to what under these regulating statutes constitutes "carrying on its business" in a State by an unauthorized foreign corporation. The weight of authority holds that a single sale of goods or a single business transaction by such corporation cannot be held to amount to carrying on business where there is no purpose to do any further business. 19 Cyc. p. 1268, and cases cited.

The case at bar is distinguishable from either of the classes of cases above mentioned. This agreement by its terms was an invasion of this State by a foreign corporation not simply to make sales of products manufactured

and delivered in a foreign State, nor was it a single act of business without intent or purpose to do any other business; but it was for the express purpose of extending and establishing its business permanently within the State. The agreement was made within the State, with a citizen of the State, to be executed by him wholly within its territory. It covered a term of 15 years, and for the rights granted under it a large consideration was received by the company. This transaction will in our opinion bear no other construction than that this corporation was carrying on its business within this State with the express intention of continuing so to do.

None of the authorities question the proposition that, if the acts of a foreign corporation, in coming within a State, amount to carrying on business, such corporation must conform with the requirements of the statute or be subjected to its penalties and restrictions. The cases cited by plaintiff as sustaining his contention that this was not "carrying on business" recognize the doctrine that where an act of business is transacted by a foreign corporation within a State with the intention to continue to transact its business in such State, the corporation is carrying on its business within such State. *Cooper Manfg. Co.* v. *Ferguson*, 113 U. S., at p. 735; *Commercial Bank* v. *Sherman*, 28 Or., at p. 576; *Florsheim Bros. Dry Goods Co.* v. *Lester*, 60 Ark. 120. See, also, *People* v. *Horn Silver Mining Co.*, 105 N. Y. 76.

In *Vaughn Machine Co.* v. *Lighthouse*, 64 N. Y. App. Div., at p. 142, the court said:

" The crucial test in doing business within the meaning of this statute is not an isolated transaction within the State or the trans-shipment of goods from the home office, pursuant to orders taken by drummers within the State, but it is the establishment of an *agency or branch office* within our State limits."

We do not find that the correctness of this definition has been questioned. When this contract was executed and delivered and the consideration paid the agency was

established. On this branch of the case we agree with the trial court that the Acme Food Company was unlawfully carrying on its business in this State and under the statute could not have maintained any action upon the note in suit.

Upon the second proposition we are unable to agree with the learned trial judge that there was no evidence in the case tending to show that the plaintiff was a bona fide holder of the note. There was such evidence given by the witness Simpson. There was also evidence given to the contrary to be considered by the jury. It was a question of fact to be determined from Simpson's testimony and his conduct as a witness and from all the evidence in the case bearing upon that question. The case should have been submitted to the jury upon this question with instructions that if they found plaintiff was not a bona fide holder of the note he could not recover in this case, for the reason that he would then have no better or other rights than his assignor, the Acme Food Company, which by law could not maintain the suit.

We have discussed all questions presented by appellant. For the reason stated the judgment is reversed and a new trial ordered.

MONTGOMERY, OSTRANDER, HOOKER, and MOORE, JJ., concurred.