### In re MONONGAHELA DISTILLERY CO.

(District Court, E. D. Michigan, S. D. April 18, 1910.)

No. 1,724.

1. BANKRUPTCY (§ 140*)—RECLAMATION OF GOODS IN POSSESSION OF BANKRUPT—CONTRACTS—VALIDITY.

A local wholesale liquor dealer without a license between May 1st and May 28th following made a contract on April 24th with a foreign liquor dealer looking to the shipment and sale of liquor to and by the former as factor for the latter. Goods were shipped before May 1st and payments made in July and August following. On May 10th a new contract was made under which the foreign dealer, before and after May 28th, shipped liquor to the local dealer as a factor, and payments were made in July and August, and in August a large amount of goods were returned to the foreign dealer. *Held,* that the court on the petition of the foreign dealer to reclaim goods in the possession of the bankrupt local dealer would presume in the absence of anything to the contrary that the goods were the product of transactions subsequent to May 28th, so that such transactions were not invalid on the ground that the local dealer had no liquor license, and the absence of a license when the goods were shipped and received did not prevent the contemplated relations of principal and factor from coming into force as soon as the local dealer obtained a license, and the foreign dealer could reclaim liquor in possession of the local dealer.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 140.*]

2. BANKRUPTCY (§ 140*)—RECLAMATION OF GOODS IN POSSESSION OF BANKRUPT—CONTRACTS—VALIDITY.

Where a foreign liquor dealer shipped goods to an unlicensed local liquor dealer for sale as a factor without knowledge that the local dealer did not have a license to sell liquor, the foreign dealer could reclaim goods in the possession of the local dealer on it being adjudged a bankrupt, for, if the contract was invalid, the title to the liquors did not pass, and the liquors and their proceeds belonged as against the trustee in bankruptcy to the foreign dealer.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 140.*]

3. COURTS (§ 371*)—FEDERAL COURTS—STATE LAWS—FOREIGN CORPORATIONS—RIGHT TO DO BUSINESS.

The prohibition in a state statute prohibiting a foreign corporation from doing business in the state without complying with the statute will be observed by the federal courts.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 972–976; Dec. Dig. § 371.*

State laws as rules of decision in federal courts, see notes to Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**4. CORPORATIONS (§ 642\*)—FOREIGN CORPORATIONS—TRANSACTING BUSINESS IN STATE.**

Where a foreign corporation and a domestic corporation had dealt with each other for years on the basis of the foreign corporation selling goods to the domestic corporation, and such basis was changed only because of the poor financial standing of the domestic corporation so that regular sales on credit were not safe, and the foreign corporation adopted the form of consigning goods to the domestic corporation for sale as a factor, to avoid the risk of loss in making a sale on credit, the arrangement was not objectionable as a subterfuge for the establishment by the foreign corporation of a warehouse and distributing sales agency within the state, without complying with the laws of the state.

[Ed. Note.—For other cases, see Corporations. Cent. Dig. §§ 2520–2527; Dec. Dig. § 642.\*

Foreign corporations doing business in state, see notes to Wagner v. J. & G. Meakin, 33 C. C. A. 585; Ammons v. Brunswick-Balke-Collender Co., 72 C. C. A. 622.]

**5. COURTS (§ 361\*)—DECISIONS—CONTROLLING DECISIONS.**

The question of what is interstate commerce is a federal question, and a decision of a state Supreme Court does not control.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 954; Dec. Dig. § 361.\*]

**6. CORPORATIONS (§ 642\*)—FOREIGN CORPORATIONS—TRANSACTING BUSINESS IN STATE—"DOING BUSINESS."**

A foreign corporation shipped liquors without the state to a factor within Michigan, retaining title thereto and contemplating that the factor should make sales to its customers within Michigan. The foreign corporation sent a man to supervise the keeping of the books and the handling of the funds by the factor, and the factor paid him. It was agreed that the book accounts should belong to the foreign corporation. *Held,* that the foreign corporation did not transact business in Michigan within the laws regulating the doing of business by foreign corporations, but the transactions partook of the character of interstate commerce.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2520–2527; Dec. Dig. § 642.\*

For other definitions, see Words and Phrases, vol. 3, pp. 2155–2160; vol. 8, pp. 7640, 7641.]

**7. BANKRUPTCY (§ 140\*)—RECLAMATION OF GOODS AND ACCOUNTS IN POSSESSION OF BANKRUPT.**

Where a contract for the shipment of goods to the consignee for sale as factor of the consignor was void, accounts for goods sold by the consignee who became a bankrupt must be turned over to the consignor on his petition therefor.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 140.\*]

**8. BANKRUPTCY (§ 228\*)—REVIEW OF ORDER OF REFEREE—ASSIGNMENTS OF ERROR—NECESSITY.**

Where the undisputed proof on a petition for the reclamation of goods and book accounts for sales in the possession of a bankrupt show that the bankrupt was entitled to a commission on sales, the court on petition to review the order of the referee directing the return of the accounts without deduction for commissions will protect the bankrupt's rights to a commission, though there is no specific assignment of error.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 387; Dec. Dig. § 228.\*]

In the Matter of the Monongahela Distillery Company, a bankrupt. Petition for review of the order granting the petition of the Schufeldt

---

Company for reclamation of goods and for book accounts. Modified and affirmed.

Sloman & Sloman, for trustee in bankruptcy.

Bernard B. Selling and Arthur E. Fixel, for Monongahela Distillery Co.

Miller, Smith, Paddock & Perry, for Henry H. Schufeldt Co.

DENISON, District Judge.   Upon the petition of the Schufeldt Company for reclamation of goods, and the supplemental petition of the same company claiming the book accounts which accrued from the sale of goods disposed of before the adjudication, the referee found in favor of the petitioner and ordered the return to the Schufeldt Company of about 200 gallons of liquors which had been shipped by it to the bankrupt, awarded to the Schufeldt Company $114.13 in the hands of the trustee as the proceeds of other similar goods, and further awarded to the Schufeldt Company book accounts which had accrued to the bankrupt by the sale of other similar goods and which were uncollected at the date of the adjudication, and which had a face value of about $3,600.   This finding was upon the theory that in the transactions in question the bankrupt had been factor and the Schufeldt Company had been consignor, and that the goods, until sold, and then the substituted accounts, belonged to the consignor.

The trustee brings this petition for review and assigns several errors, which can be grouped as follows:

(1) The dealings between the Schufeldt Company and the Monongahela Company contemplated the sale by the latter in Michigan, and as a wholesale liquor dealer, of the liquors furnished for that purpose by the former, and that, because the bankrupt at the date of the arrangement had no license under Michigan laws, to do this business, the contract was invalid, and neither party is entitled to any legal remedy.

(2) The transactions amounted to a doing of business within the state of Michigan by the Schufeldt Company, and it cannot ask any aid from the courts, because it had not qualified itself, under Michigan laws, to do business, as a foreign corporation, within that state.

## 1. The Liquor License.

The annual license of the Monongahela Company as a wholesale liquor dealer expired May 1, 1909.   A contract between the parties, looking to the shipment and sale of liquors to and by the Monongahela Company, as the factor for the Schufeldt Company, was made April 24th, and under that contract goods were shipped, before May 1st, amounting to about $1,500.   Payments on account were made in July and August amounting to about $1,200, and a large amount of goods was returned.   It does not appear whether any of the goods shipped or received before May 1st entered in their original form or in the form of substituted accounts into the award made by the referee; and the proofs furnish no means of determining this question.

The original arrangement of April 24th did not extend to any particular amount, and the Schufeldt Company was under no obligation

on May 1st to ship any more than it had already shipped. More goods being asked for, the Schufeldt Company's representatives came to Detroit, were unwilling to ship without more definite and exact arrangements, and entered into a further contract of the same nature, but giving it additional safeguards, and the shipments thereafter were made under and pursuant to the contract of May 10th. From May 15th to May 21st, shipments were made amounting to about $8,000. On May 28th the Monongahela Company took out its regular license, and no question exists of its authority to do business after that date. In August a large amount of the goods was returned to the Schufeldt Company. There is no proof from which it is possible to determine whether any of the goods shipped from May 1st to May 21st were received and sold before May 28th, or whether any such goods remained on hand in their original form when this petition was filed, or whether the book accounts on hand represented any such goods. If either this question or the one just above stated becomes material, it must be decided upon some theory of presumption.

I think the lack of license by the Monongahela Company until May 28th is immaterial for these reasons:

[1] First. It does not appear that any of the subject-matter now in controversy arose out of shipments before May 28th, and I find no presumption to that effect; on the contrary, the ordinary presumption is that the remaining portion of an account is the product of the transactions of latest date, and goods consigned at over $3,200 were shipped after May 28th.

Second. Even if some shipments are involved, which were made before May 28th, it is even less probable that those sales by the consignee to its customers which remain unpaid for were made before that date; and I do not see how the absence of a license when the goods were shipped and received, although it might involve the immediate relations of the parties, would prevent the contemplated relations from coming into force as soon as the consignee was legally qualified to do the expected business. In the case of Niagara Falls Co. v. Wall, 98 Mich. 158, 57 N. W. 99, relied upon by counsel for the trustee, it appeared that the impediment preventing the consignee from lawfully doing the expected business continued until the contract had been rescinded by one party for a breach by the other; manifestly, a different situation from one where both parties continue after the temporary impediment is removed.

[2] Third. Even if the contract of May 10th was wholly void, the trustee would not be helped in his present position, the title to the liquors would not have passed, and both the liquors and their proceeds would belong to petitioner, nor would petitioner, in that event, be barred from relief on the ground that both parties were in equal wrong, since there is nothing tending to show that petitioner doubted or had any reason to doubt the consignee's full, legal capacity to continue to carry on the business in which it had been for several years engaged.

## 2. The Foreign Corporation.

[3] The question whether the carrying out of the arrangement of May 10th amounted to a doing of business by the Shufeldt Company

within the state of Michigan is perhaps not free from doubt. If this was doing business within the state, it was prohibited by that statute, any suit based upon such contract is likewise prohibited, and such prohibition will be observed by the federal courts as well as by the state courts. See Judge Lurton's opinion in Oakland Co. v. Wolf Co., 118 Fed. 239, 55 C. C. A. 93.

It is argued that this arrangement was a mere subterfuge for a warehouse and distributing sales agency, and should be treated accordingly. Whatever the rule as to an ordinary consignment for sale by a factor, it may very well be that if a nominal consignment account was in fact a subterfuge for such an agency, and was adopted to evade a statute regulating or taxing doing business within the state, the form might be overlooked, and the relation might be treated according to its substance; but in this case there is no evidence tending to show any such subterfuge.

[4] On the contrary, the parties had been dealing for years on the ordinary basis of selling and buying, and such basis was changed only because the buyer's financial standing became so poor that regular sales on credit were not safe. The seller, the Schufeldt Company, adopted this form only for the purpose of avoiding the risk of loss in making a sale on credit, and took no precautions not adapted to that end. Obviously, when a consignor without the state ships goods to a factor within the state, retaining the title thereto, and contemplating sales by the factor to its customers within the state, the entire transaction partakes of the character of both interstate commerce and of doing business by the consignor within the state. Under the rule stated in Higgins v. McCrea, 116 U. S. 671, 6 Sup. Ct. 557, 29 L. Ed. 764, to the effect that the contracts of sale made by a factor in his own name are in law the contracts of the consignor, it would seem that sales so made were sales by the consignor at the selling point, and that when, as in this case, the transaction was not a single instance, but both parties contemplated a permanent arrangement, disposing of a large amount of goods, it constituted doing business at that point; but such conclusion is only argumentative, and the contrary result is reached by the Circuit Court of Appeals of the Eighth Circuit, in a very elaborate opinion in Butler Bros. Shoe Co. v. U. S. Rubber Co., 156 Fed. 1, 84 C. C. A. 167. This decision was made in 1907. A writ of certiorari was denied by the Supreme Court. 212 U. S. 577, 29 Sup. Ct. 686, 53 L. Ed. 658. It has been cited and followed by the U. S. District Court in the Western District of Wisconsin (Atlas Engine Works v. Parkinson [D. C.] 161 Fed. 229), and I cannot find that it has been in any way questioned. I therefore accept the rule there stated, and think that there are no circumstances in the present case distinguishing it from the Butler Bros. Case.

[5] The question of what is interstate commerce is a federal question, and the decision of the Supreme Court of Michigan in Neyens v. Worthington, 150 Mich. 580, 114 N. W. 404, 18 L. R. A. (N. S.) 142, would not control, even if parallel; but the circumstances, 1, 2, 3, and 4, pointed out on page 586 of 150 Mich., on page 404 of 114 N. W., on page 142 of 18 L. R. A. (N. S.), fully distinguish the two cases on their facts.

[6] It appears, also, that a Mr. Beck was sent practically at the dictation of the petitioner to supervise the keeping of the books and handling of the funds relating to these goods; but he was employed and paid by the consignee, and the fact that he was selected by the consignor and owed some allegiance to it is not controlling. It is also urged that the special contract that the book accounts should belong to the Schufeldt Company is important; but such ownership of the resulting debts or securities is typical of the factor's relation, the general title being in the principal and the factor having a special interest in aid of his lien. Brander v. Phillips, 16 Pet. 121, 10 L. Ed. 909; U. S. v. Villalonga, 23 Wall. 35, 23 L. Ed. 64; Beckwith v. Sibley, 11 Pick. (Mass.) 482; Bank v. Heilbronner, 108 N. Y. 439, 15 N. E. 701.

The trustee's counsel especially urges that the Wilson act (26 Stat. L. 313 [U. S. Comp. St. 1901, p. 3177]) takes the liquor traffic outside the rule of the Butler Bros. Case, and he relies on the Delamater-South Dakota Case, 205 U. S. 93, 27 Sup. Ct. 447, 51 L. Ed. 724. I do not so understand the force of this Delamater Case. The substantial matter now involved is whether the dealings in question come within the established definition of interstate commerce. The Wilson act did not, in the least, modify this definition. It only yielded to the states the right to make police regulations which, except for such permission, would have remained within the exclusive power of Congress; and, since the Wilson act and prior to this controversy, Michigan had not legislated under such permission. Hence in April or July, 1909, the right of a foreign corporation to act in Michigan as a part of interstate transactions was the same whether its business was in liquors or in rubber boots.

[7] There is the further consideration that, if the special contract of May 10th was void, then the title to the goods never passed, and the Schufeldt Company would be the owner of the goods on hand, and entitled to their return. I see no reason why the same principle would not cover the accounts, though Judge Hallett, upon the trial of the Butler Case (C. C.) 132 Fed. 398, refused to go to that extent. It would seem that it is the trustee who must rely upon the special contract in order to enforce the factor's lien, if, in fact, any reliance thereon is necessary by either party. It follows that the referee's conclusions must be approved, except so far as they disregard the factor's lien upon the accounts.

[8] There is no assignment of error on this point; but the proofs show without dispute that the Monongahela Company was entitled, upon such sale, to a commission equal in difference between the consignment price and the final selling price. This commission must be a considerable fraction of the amount of each final sale; and the accounts must have included amounts prima facie belonging to the bankrupt. There is no proof of any shortage or any countercharge. It therefore appears that the absolute assignment of the entire accounts to the Schufeldt Company without protecting the factor's lien was erroneous; and I do not think this should be overlooked merely for the technical cause that the assignments of error do not specify this particular reason why the challenged result was wrong. It may

186 F.—15

be that, in strictness, the Shufeldt Company was not entitled to a transfer of the accounts until it had satisfied any lien which in fact existed in favor of the trustee, but it makes no substantial difference which party does the collecting of the accounts; the rights of the other being preserved.

Perhaps no further accounting will be actually necessary because it may be apparent from the facts not now before me that there is a sufficient general balance in the account against the bankrupt to exhaust its interest in the unpaid accounts, in which case it will have no lien. 12 Am. & Eng. Encyc. (2d Ed.) 679; McGraft v. Rugee, 60 Wis. 406, 19 N. W. 530, 50 Am. Rep. 378.

The assignment of accounts will be modified so as not to prejudice any existing lien, and, if necessary, an accounting will be had pursuant to the order filed herewith. It goes without saying that counsel will not go to the expense of such accounting, unless it seems that there is a substantial amount coming to the trustee, and that the Schufeldt Company will make a full statement of the condition of the accounts transferred to it so that the trustee can determine whether to proceed formally.

There is no occasion for awarding any costs to either party.