STANDARD FASHION CO. *v.* CUMMINGS.

CONSTITUTIONAL LAW — INTERSTATE COMMERCE — CORPORATIONS —
RIGHT TO SUE—SALES.

> Where a foreign corporation entered into a contract with
> a resident of Michigan granting an agency for the sale
> of Standard patterns, for a stated term and from year to
> year thereafter, until it should be terminated by the par-
> ties, binding the corporation to sell and deliver f. o. b.
> New York or Chicago, Standard patterns, with advertising
> matter, at prices named, the buyer or agent agreeing to
> purchase a quantity of fashion plates for distribution and
> stipulating that all goods should be paid for on the 15th
> day of the month succeeding delivery, the agent agreeing
> to handle the line exclusively, did not amount to doing
> business in the State so as to bar an action by the cor-
> poration, under Act No. 34, Pub. Acts 1903; the business of
> the plaintiff was interstate commerce and, though called an
> agency in the writing, the other party thereto became
> liable as a purchaser without regard to the name by which
> he was called.

Error to Wayne; Murphy, J. Submitted November
17, 1914. (Docket No. 73.) Decided July 23, 1915.

Assumpsit by the Standard Fashion Company, a for-
eign corporation, against Mary E. Cummings upon a
special agreement. Judgment for defendant on a di-
rected verdict. Plaintiff brings error. Reversed.

*Raymond E. Van Syckle,* for appellant.

*Arthur H. Covert,* for appellee.

STONE, J. The plaintiff, a New York corporation,
brought suit in assumpsit in justice's court, declaring
orally on all the common counts, and specially on the
contract hereinafter set forth. Defendant pleaded the
general issue. From a judgment for defendant, after

a trial upon the merits, plaintiff appealed to the circuit court. Plaintiff's case upon trial in the circuit court was substantially as follows: Prior to January 23, 1907, plaintiff had sold to I. Jay Cummings, who owned and conducted a retail store at Paw Paw, Mich., a stock of paper patterns amounting to $150, of which $75 remained unpaid. On that date Cummings entered into a written contract with plaintiff, signed by plaintiff's traveling representative, as follows:

"Mutual agreement between the Standard Fashion Company of New York, first party, and I. Jay Cummings of Paw Paw, State of Michigan, second party.

"First party hereby grants to the second party an agency for the sale of Standard Patterns for ———— in the city of Paw Paw, State of Michigan, for three years from date hereof, and from year to year thereafter until this agreement is terminated, as hereinafter provided, and agrees to sell and deliver f. o. b. New York, or at Chicago, Ill., to second party, Standard Patterns at a discount of fifty per cent. from retail prices, and advertising matter at the prices and on the conditions named on the reverse side hereof; also such other publications as may be issued by first party, at regular agent's rates; to allow second party to return discarded patterns semi-annually, between January 15th and February 15th, and July 15th and August 15th, in exchange at nine-tenths cost for other patterns to be shipped at the time of return or thereafter, but not in exchange for other goods than patterns. Patterns returned for exchange must have been purchased by second party from first party direct and must be delivered in good order to first party at its general office in New York.

"Second party agrees, in consideration of the above to purchase from the first party, for free distribution, Standard fashion sheets to a number not less than three thousand (3,000) per annum, and handy catalogues to a number not less than ———— per annum, to pay transportation charges on all goods ordered or returned under this agreement; to purchase and keep on hand at all times, except during the periods of exchange specified above, one hundred fifty (150) dol-

lars' value in Standard patterns, at net invoice prices, and to pay first party for a pattern stock of the amount stated above, to be selected by the first party, the terms of payment to be as follows: ——— dollars at time of signing this contract, and ——— dollars in thirty days after shipment of stock, in regular monthly account as herein provided, the balance of the purchase price, seventy-five (75) dollars, to remain unpaid, as a standing credit, during the continuance of this agreement, and to become due and payable at its termination, second party to pay interest on this standing credit at the rate of 5 per cent. per annum on January 15th of each year; all other purchases to be paid for on or before the 15th day of the month succeeding the date of shipment.

"Second party also agrees not to assign or transfer this agency, nor to remove it from its original location without the written consent of said first party, not to sell or permit to be sold on the premises of second party, during the term of this contract, any other make of patterns and not to sell Standard Patterns except at label prices. Second party further agrees to permit first party or its representative to take account of pattern stock whenever it desires, to pay proper attention to the sale of Standard Patterns, to conserve the best interests of the agency at all times, to reorder promptly all patterns as sold, and to give the department a prominent position on the ground floor in the store.

"Either party, desirous of terminating this agreement, must give the other party three months' notice in writing, within thirty days after the expiration of any contract period as above specified, the agency to continue regularly during such three months. Upon expiration of such notice, second party agrees to promptly return to first party all standard patterns bought under this contract and then on hand, which first party agrees to credit on receipt in good order at three-fourths cost, paying to second party, within thirty days after receipt of same, in cash, any balance due. Neglect to return the pattern stock within two weeks after expiration of three months' notice shall relieve first party from all obligation to redeem the same. Failure to require compliance with the strict

letter of this agreement shall not constitute a waiver of any condition nor forfeit nor prejudice any right hereunder.

"It is hereby acknowledged by both parties that there are no verbal understandings between them conflicting with this contract.

"Dated January 23rd, 1907.

"Done at New York, State of N. Y.

"STANDARD FASHION COMPANY,

"Per A. J. CONNELL.

"[First Party.]

"I. JAY CUMMINGS.

"[Second Party.]".

Reverse side:

"Advertising Matter—Rates and Privileges.

"Fashion Sheets: $6.00 per thousand.

"In lots of 500 and over per month, front card and upper portion of back printed with agent's advertisement (without extra charge) if changed only twice a year.   Each additional change $2.00.

"In lots of 1,000 and over per month, front card and upper portion of back page printed with agent's advertisement, which may be changed quarterly (without extra charge).

"In lots of 2,000 and over per month, front card and upper portion of back page printed with agent's advertisement, which may be changed monthly (without extra charge).

"Copy of advertisement for March issue must be in our hands by January 15th, to insure insertion.   Make some allowance of time on all changes of advertisements.   We reserve the right to repeat last advertisement if change is not received by us in due time.

"Fashion Sheets:   In lots of less than 500 of one issue, without extra printing; 50 cents per hundred; blank space on front page in which merchant may stamp his business card.   When 250 or more of one issue are ordered, merchant's card will be printed on front page at a charge of 50 cents for each printing.

"Handy Catalogues:   (Issued February and August).   $2.00 per hundred, with agent's card printed on first page of cover on orders of 100 or over of one issue, and entire last page of cover in addition, with

same advertisement as running on sheets, when 500 or more are ordered of one issue."

Subsequent to signing this contract Cummings carried in stock patterns he procured from plaintiff, until his death on September 28, 1908, before the contract terminated. After Cummings' death there was evidence tending to show that the business was conducted by the widow, the defendant, on her own personal responsibility, until she sold out the business in November, 1909. During that period she ordered and received patterns from the plaintiff, by mail, from time to time, in accordance with the terms of the contract. There was evidence tending to show that both parties treated the contract as subsisting. Between November 1 and December 10, 1909, defendant sold the business, returning no patterns to the plaintiff. Upon the original contract there was claimed to be due the $75 remaining unpaid at the time the contract was signed, and $2.62 for patterns later ordered.

At the conclusion of plaintiff's testimony, the trial court granted defendant's motion for a directed verdict in her favor, on the sole ground that plaintiff, a foreign corporation, was carrying on business in Michigan without having complied with the requirements of Act No. 206, Pub. Acts 1901, as amended by Act No. 34, Pub. Acts 1903, and was therefore precluded from maintaining this action. By the charge of the court it appears that its decision was based solely upon the ground above stated. In its charge the court said:

"The position is taken by the defendant that the plaintiff, which concededly is a foreign corporation, is engaged in carrying on its business, or was at the time in issue here, in this State without having first filed in the office of the Secretary of State a certified copy of its charter, or articles of incorporation. It is conceded that the plaintiff has not filed any such copy of its articles of incorporation in this State."

After holding that plaintiff was carrying on its business in this State in violation of the statute, and that such business was not a sale of goods or merchandise which would be protected by the rights of interstate commerce, the court further said:

"This statute provided that any foreign corporation, subject to the provisions of the law in question, shall not maintain any action in this State upon any contract made by it, after the taking effect of this act, until it shall have fully complied with the requirements of the act. Now, not having complied with the requirements of the act, the plaintiff in my view cannot maintain this action. It is precluded by our law from doing it."

A judgment for the defendant was thereupon entered. There was a motion for a new trial, which was denied, the reasons stated for the denial being substantially those contained in the charge of the court. Plaintiff, having excepted to such reasons and the refusal of the court to grant a new trial, brings the case here upon writ of error, and the principal question discussed under appropriate assignments of error is: Was plaintiff carrying on business in this State within the meaning of our statute?

The point is made by plaintiff by assignment of error that this defense, not having been affirmatively pleaded, was improperly before the court under subdivision (*c*) of Circuit Court Rule 7. But as this case arose in justice's court, and as the learned trial judge stated that it was conceded that the plaintiff had not filed any such copy of its articles of incorporation in this State, we think that we should dispose of the question upon its merits.

It is the claim of the plaintiff that it was not, and the contract did not contemplate, carrying on business in Michigan within the prohibition of the statute, that the business carried on by a foreign corporation in this State, to be unlawful, must be local business, or

"intrastate" commerce, and that the importation and sale of goods to residents of Michigan by a foreign corporation constitute interstate commerce, and cannot be prohibited by the act. It is urged that the sale of plaintiff's merchandise to a citizen of Michigan, and its importation were protected by the rights of interstate commerce; that plaintiff did not go further and by the contract provide for the carrying on in Michigan of its own business through defendant as its agent. We have read this contract with great care in connection with the other evidence in the record, and have also re-examined, not only our own recent cases, but the Federal cases as well. And while it may be said that the instant case is near the border line, yet we are of opinion that it falls within that line of cases holding that where a sale takes place under the circumstances surrounding this transaction, the rule relating to interstate commerce applies. The following Michigan cases have been examined upon this subject: *Rough* v. *Breitung,* 117 Mich. 48 (75 N. W. 147) ; *Neyens* v. *Worthington,* 150 Mich. 580 (114 N. W. 404, 18 L. R. A. [N. S.] 142) ; *Haughton Elevator, etc., Co.* v. *Candy Co.,* 156 Mich. 25 (120 N. W. 18) ; *Showen* v. *J. L. Owens Co.,* 158 Mich. 321 (122 N. W. 640, 133 Am. St. Rep. 376) ; *Imperial Curtain Co.* v. *Jacob,* 163 Mich. 72 (127 N. W. 772) ; *Despres, Bridges & Noel* v. *Zierleyn,* 163 Mich. 399 (128 N. W. 769) ; *Nernst Lamp Co.* v. *Conrad,* 165 Mich. 604 (131 N. W. 120) ; *E. A. Lange Medical Co.* v. *Brace,* 186 Mich. 453 (152 N. W. 1026). In our opinion, the instant case differs and should be distinguished from the foregoing cases, and is controlled by the decisions relating to interstate commerce. We are constrained to hold that under this contract and the evidence this plaintiff, a foreign corporation, was not doing business in Michigan, but that it sold its goods to I. Jay Cummings, who, it is true, had the exclusive right to sell them,

but they were not sold by Cummings for or on account of the plaintiff, but exclusively on account of said Cummings.

In the recent case of *E. A. Lange Medical Co.* v. *Brace, supra,* Justice KUHN reviewed the Federal decisions upon this question. We call attention to the case of *Butler Bros. Shoe Co.* v. *Rubber Co.,* 156 Fed. 1, 84 C. C. A. 167, where Judge Sanborn, of the United States Circuit Court of Appeals, reviews the Federal decisions, and also to the case of *In re Monongahela Distillery Co.,* 186 Fed. 220, where Judge Denison, of the United States District Court, again reviews the question, and, referring to the case of *Butler Bros. Shoe Company,* states that a writ of certiorari was denied in that case by the Supreme Court of the United States, 212 U. S. 577, 29 Sup. Ct. 686, and also refers to the fact that the case has been cited and followed by the United States District Court in the Western District of Wisconsin, in *Atlas Engine Works* v. *Parkinson,* 161 Fed. 223, 229. The question of what is interstate commerce is a Federal question, and the Federal decisions are controlling; but we are of opinion that they are not in conflict with our own cases. Many other cases, Federal and State, might be cited. We content ourselves with citing only the following: *Standard Fashion Co.* v. *Hayes-Brown Co.,* unreported opinion of the Supreme Court of Tennessee, rendered July 5, 1907; *Standard Fashion Co.* v. *McLeod* (7 Alberta L. R. 145), decision rendered April 25, 1914, in the supreme court of Alberta. Both these decisions reached the conclusion that the transactions under the contracts, similar to the one involved in this suit, amounted to a sale, and fell within the rule applicable to interstate commerce. In the instant case it is true that the written agreement between the plaintiff and Cummings purported to be an appointment

by the plaintiff of Cummings as the company's agent; but as was stated in the *McLeod Case:*

"There is no magic in a word, and we must see the sense of the agreement as a whole."

Taking the contract as a whole, the company agreed to sell and deliver, f. o. b. New York, or at Chicago, Ill., to Cummings "Standard Patterns" at a discount of 50 per cent. from retail prices, and also advertising matter at certain prices and on certain conditions, and also such other publications as might be used by the plaintiff at regular agents' rates, Cummings to be at liberty to return discarded patterns semi-annually, between certain dates, in exchange at nine-tenths cost for other patterns. Cummings agreed to purchase from plaintiff for free distribution "Standard Fashion Sheets" to a certain number, to pay transportation charges on all goods ordered or returned under the agreement, etc. We need not repeat all of the terms of the contract. We cannot doubt that when these articles of merchandise were delivered to Cummings they became his property, and the sales were made on his own account, and not on account of the plaintiff. We are of opinion that the delivery of these goods to the common carrier at the places named to be transported to Cummings at Paw Paw, Mich., was an act of interstate commerce, and, so long as the business of plaintiff, a foreign corporation, was limited to the acts of interstate commerce, and did not establish within the State a local agency to represent it in the sale of its goods, wares, and merchandise, it was not amenable to the law of this State requiring foreign corporations, as a condition of transacting business in this State, to file a copy of their charter or articles of association as prescribed by the Michigan act. It is well established that the proper construction of a contract is not dependent upon any name given to the instrument by the parties, or any one provision, but

upon the entire body of the contract, and the legal effect of it as a whole. The learned trial court in its charge to the jury seemed to think that if the transaction tended to further the business of the plaintiff within this State, it fell within the terms of our statute. We do not think that a controlling test. Probably the great bulk of interstate business is done for the purpose of furthering the business of the foreign corporation. We think the test is: Was the plaintiff engaged in carrying on a local business within this State? We are constrained to hold that under this record it was not, and that the learned trial court erred in directing a verdict for the defendant.

Many other questions relating to the liability of this defendant suggest themselves to one who reads this record, but as those questions were not presented to us, and have not been discussed by counsel, we express no opinion beyond holding that the directed verdict, for the reason stated by the trial court, was erroneous.

Some questions relative to the admission of testimony were discussed by appellant's counsel, especially the deposition of the witness John T. Scanlon, the president of plaintiff company. We think the court did not err in holding that some portions of his deposition were hearsay and inadmissible.

For the error pointed out the judgment of the circuit court is reversed, and a new trial granted.

BROOKE, C. J., and KUHN, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.

This case was originally assigned to the late Justice MCALVAY.