PEOPLE *v.* WATTERS.

CONSTITUTIONAL LAW—INTERSTATE COMMERCE—MUNICIPAL CORPORATIONS—LICENSE—PEDDLERS.

> Sales of toilet cream from a stock that had been left over from previously ordered goods, the body of the articles sold coming from a foreign State, New York, did not bring a solicitor within the rule of interstate commerce; he was guilty of violating a local ordinance against peddling without a license, though but two articles, worth 25 cents each, were supplied out of the goods on hand.

Error to Alger; Fead, J. Submitted June 15, 1916. (Docket No. 127.) Decided July 21, 1916.

Harvey Watters was convicted of peddling in violation of a city ordinance, and sentenced to pay a fine of ten dollars. Affirmed.

*D. E. Simmons*, Prosecuting Attorney, for the people.

*W. T. Potter*, for respondent.

MOORE, J.  This case was tried before the circuit
judge who filed a written opinion which we quote in
part:

"The respondent was tried in justice's court for the
offense of peddling in the city of Munising on, to wit,
July 8, 1915, contrary to the provisions of Ordinance
No. 14 of said city.  He was convicted in justice's court,
and appealed to the circuit court, where a trial was
had at the October term before the court; the respond-
ent having waived a jury.

"The Grand Union Tea Company is a New Jersey
corporation, with headquarters at Brooklyn, N. Y.,
formed for the purpose of selling goods handled or
manufactured by Jones Bros. of New York.  It rents
a building in Ishpeming, Mich., in the front part of
which it conducts a retail store.  In the back part of
the building and in the basement it conducts what is
called a solicitors' department, in which it handles tea,
coffee, soap, baking powders, spices, toilet prepara-
tions, etc.; the first four articles constituting its prin-
cipal business.   *   *   *

"The company had nine solicitors, each having his
own territory to cover.   *   *   *

"To trace the particular transactions complained of:
It appears that on June 6th or 7th the respondent took
orders from various parties in Munising for certain
articles, including teas, coffees, toilet creams, etc.  The
orders were noted by respondent on an order book,
which he retained for his own use, and which he did
not turn in to the store, but which, under his contract,
was the property of the company.  Thereafter, and
about ten days or two weeks later, he turned in to the
Ishpeming manager a commission bill of his orders;
such commission bill being a statement in the aggre-
gate of the goods he would need to fill the orders he
had taken.  The amounts of the separate customers'
orders or the customers' names were not reported to
the manager nor sent to the company.  The orders
taken in June were for July delivery.   *   *   *

"In the course of the conduct of the business at Ish-
peming, the solicitors' department is filled with goods
upon the arrival of freight from New York.  Directly
thereafter the solicitors' orders are filled, so that the

stock is greatly depleted. Sometimes the department runs out of certain articles, but at no time is it entirely empty. There are always some tea and coffee on hand, and frequently other articles. Some time prior to June the manager, anticipating a fair sale of toilet creams, ordered an amount thereof, and such creams were on hand in the solicitors' department in June, when respondent took his order, and two cans of toilet cream were included in respondent's July delivery in Munising; the orders for them having been taken in June. So far as can be traced, no articles included in respondent's June orders and July delivery at Munising were in the State when the orders were taken, except the two cans of toilet cream.

"It thus appears that the manager did not order from Brooklyn upon the direct basis of the solicitor's orders, but merely estimated the amount which he thought would be necessary to fill such solicitors' orders during the week the goods would arrive from New York; and because of error in his estimates he sometimes had goods left over, which remained and were included in subsequent solicitors' orders. The surplus goods do not seem to have been transferred to the retail department. The estimated amount of goods left over each week after filling the orders was not shown.
\* \* \*

"The principal contention of respondent is that he was engaged in interstate commerce, and the ordinance is unconstitutional as far as it affects such acts. It appears, however, that the respondent took orders for some goods which were within the State when the order was taken, which had been shipped into the State without previous order therefor, and which were being held in the State for the purpose of sale to the public. As to such goods, the respondent and his employer were engaged in intrastate commerce. *Bacon* v. *Illinois,* 227 U. S. 504 (33 Sup. Ct. 299, 18 L. R. A. [N. S.] 134, note) ; 19 Cyc. p. 1231; *E. S. Lange Medical Co.* v. *Brace,* 186 Mich. 453 (152 N. W. 1026) ; *Neyens* v. *Worthington,* 150 Mich. 580 (114 N. W. 404) ; *Imperial Curtain Co.* v. *Jacob,* 163 Mich. 72 (127 N. W. 772).

"Where part of the transaction is purely an act of interstate commerce, still the State power over the

separable internal part of the matter is unaffected. 7 Cyc. p. 441, and note. The respondent was therefore guilty of peddling within the provisions of the ordinance.

"Counsel have urged a determination of the question of the general character of the business of respondent's principal, shown above, as to being intra or inter state commerce, for future guidance; but as the determination of this question is not necessary to the decision of this case, and the full texts of the authorities cited are not available to the court at this time, a discussion rather in the nature of dicta than of adjudication would be all that could be attempted."

The court took the case under consideration, and on the 24th day of January, 1916, he found defendant guilty, and sentenced him to pay a fine of $10 and costs, amounting to $12, within 24 hours, and, in default of the payment of the said fine and costs, that he be confined to the county jail until such fine and costs are paid, not exceeding 30 days.

The case is not here upon exceptions before sentence, but is here upon writ of error. We quote from the brief of respondent:

"It is the contention of the defendant: (1) That if all of the goods for which orders were taken were outside of the State of Michigan when said orders were taken, the defendant was clearly engaged in interstate commerce. (2) That the fact that only 2 cans of toilet cream, of the value of 25 cents each, out of total deliveries of $66.75, were within the State of Michigan when the orders for said goods were taken, does not change the character of the business of the defendant, so as to bring him within the provisions of said Ordinance No. 14, for the reason that it is the principal character of the business, and not the exception, which should determine the question of whether or not the defendant was engaged in interstate commerce on the day of his arrest."

If defendant may sell 2 cans of toilet cream, may he sell 50 cans without violating the ordinance? It is

not seriously contended that, as to the sales of the toilet cream, it was interstate commerce. We think the authorities cited by the circuit judge clearly show as to those sales they were intrastate commerce, and they made defendant guilty as charged, and it is wholly unnecessary to a disposition of the case to discuss the status of the other sales, and especially so as sentence has been pronounced and presumably, from lapse of time, been met.

We can do no less upon the record than to affirm the judgment, and the other feature of the case becomes a moot question which we decline to consider. *Howe* v. *Doyle*, 187 Mich. 655 (154 N. W. 62) ; *Carlson* v. *Wyman*, 189 Mich. 402 (155 N. W. 418) ; *Schouwink* v. *Ferguson*, 191 Mich. 284 (157 N. W. 726).

Judgment is affirmed.

STONE, C. J., and KUHN, OSTRANDER, BIRD, STEERE, BROOKE, and PERSON, JJ., concurred.