## LEONARD CUSTOM TAILORS CO. v AETNA CASUALTY & SURETY CO.

Common Pleas Court, Hamilton Co.

No. A-68012.   Decided Dec. 16, 1940.

Dolle, O'Donnell & Cash, Cincinnati, for plaintiff.

Sanford A. Headley, Cincinnati, and James G. Headley, Cincinnati, for defendant.

### OPINION

BY THE COURT:

This case is before the court on two motions, at the close of all the evidence. The first motion is one by the plaintiff, to strike from the evidence two sections of the public laws of Michigan introduced in evidence by defendant. The other motion is by the defendant for an instructed verdict in

its favor. The decision on these motions necessarily involves the pleadings, the evidence and the law.

The petition in this case sets forth in substance that the defendant company entered into a contract with the plaintiff, the nature of the contract being an indemnity bond, by the terms of which the defendant agreed to guarantee that it would make good any loss sustained by the plaintiff through any misappropriation, or wrongful abstraction, or embezzlement of any of the plaintiff's funds by reason of the dishonest acts of its employees. The maximum of the guaranty was $10,000. It is then set forth that in February, 1939, the plaintiff discovered that three of its employees in the city of Detroit, Michigan, had wrongfully abstracted and misappropriated the sum of $2,215.75; that it notified the defendant of its loss, and the defendant refused to pay. The prayer of the petition is for a money judgment against the defendant for that sum with interest from the 24th day of February, 1939.

The defendant filed its answer, which contains four defenses. After admitting that on the 10th of November, 1938, it did enter into a contract of indemnity entitled: "Primary Commercial Blanket Bond," the defendant sets forth in the first defense that it denies that the plaintiff suffered any loss covered by the bond.

For a second defense it is set up that the plaintiff company was doing business in the state of Michigan without complying with the statute of the state, under the terms of which it was necessary for a foreign corporation to secure from the secretary of state a certificate of authority to do business. It is also set forth in this defense that the contract between plaintiff and Samuels, Gagnon and Starkey (the three employees) is illegal and void, and of no effect, and pleads the illegality of that contract as a bar to recovery.

The third defense in the answer sets forth the claim that the plaintiff falsely answered certain questions which were in the application for the indemnity bond, and the fourth defense sets forth that under a provision of the bond the bond should be deemed cancelled as to any employee immediately upon discovery by the insured of any fraudulent or dishonest act on the part of the employee. It then sets forth that the plaintiff had full information of the default of Samuels, Gagnon and Starkey at the time, or about the time, of the execution of the bond. The prayer of the answer is that the petition be dismissed, and and that the defendant go hence.

The plaintiff filed a reply to this amended answer, in which it is set up that Samuels, Gagnon and Starkey are employees within the meaning of the word "employee" as used in the bond, and that it was agreed prior to the execution of that bond, that these three parties were employees of the plaintiff.

As to the third and fourth defenses the plaintiff makes a general denial.

The evidence is substantially as follows: Milton Englander, the manager of the particular brand of clothing which was handled in Detroit, testified that he and a business associate, also employed by the plaintiff, went to Detroit and went to the place of business of Samuels in the city of Detroit, and had a conversation with him with reference to his (Samuels') giving up a line of clothing he was then handling, and taking on the plaintiff's line. A general discussion was had at that time, and the evidence is that after that discussion Mr. Englander told Mr. Samuels that the president of the company would have to finally O.K. and pass upon the arrangement—the president being Leonard M. Shapoff. The testimony further discloses that Mr. Shapoff, a few days later, on his way to New York City, stopped off at Detroit and had some conversation with Mr. Samuels, and told him to come to Cincinnati and complete the arrangements to take on their line. Mr. Samuels came to Cincinnati, and again conferred with Mr. Englander, at which time, Mr. Englander testified that all the details were figured out, that an agreement was entered into by the terms of which Mr. Samuels

was to take on plaintiff's line of clothing; that plaintiff was to pay all the expenses of the Detroit office, amounting in the start under the agreement, to one hundred dollars per week. As part of the arrangement a bank account was started in the name of the plaintiff, not by the corporate name but in the name of the line of clothes that Samuels was handling. Under the terms of the agreement that was a one-way bank account, Samuels having authority and being under instruction and direction to pay money into the bank account, but having no authority to withdraw money from the account.

Shortly after Samuels took over this line, and prior to the execution of this bond, another bonding company cancelled a previously executed bond upon Samuels. The reason for that cancellation is not in evidence, but after that cancellation, from April 1938 on, all of the goods shipped from Cincinnati were shipped in the name of Gagnon, but the plaintiff company continued to charge against the account of Samuels all of this merchandise. The business was carried on in that fashion until some time in January 1939, when it was discovered that large amounts of merchandise had been sold and paid for by the persons to whom it was delivered, and the money was not placed in the bank by Samuels, but was misappropriated, and as claimed by him used for the payment of expenses. Thereupon the plaintiff made a claim against the defendant, not for the full amount of the shortage, but for the sum of $2,215.75.

The first question presented for consideration and determination is, whether or not this plaintiff company was engaged in interstate commerce in the shipment of goods to Michigan, or was engaged in business in the state of Michigan.

The test of whether or not a corporation is doing business in a state is discussed and decided in Neyens v Worthington, 150 Mich. 580; Cooper Mfg. Co. v Ferguson, 113 U. S. 735; People v Home Silver Mining Co., 105 N. Y., 76. This question is discussed and decided in many other cases, but in the opinion of the court these three cases are well considered, one of them by the Supreme Court of the United States, another by the Supreme Court of Michigan, and the third by the Court of Appeals, the highest court of New York. Under those decisions there can be no question that the plaintiff company was not engaged in interstate commerce in the shipment of these goods into the state of Michigan so as to fall within the exception to the Michigan statute, but the company was engaged in business in Michigan so as to come within the provisions of the act relating to foreign corporations doing business in that state, and it is an admitted fact that the plaintiff did not at any time secure a certificate from the secretary of state as provided by the Michigan act. The statute of Michigan makes it unlawful to do business in Michigan without first obtaining a certificate, and provides that no foreign corporation shall be capable of making a valid contract in that state until it shall have fully complied with the act, and have an unrevoked certificate at the time of entering into the contract, that it is authorized to do business therein.

The first conclusion of the court therefore is, that this ▮▮▮▮▮ ▮ company was doing business in Michigan without a certificate so to do.

Many cases have been examined by the court, and cited by counsel, that have to do with questions arising from operations by non-complying foreign corporations, and these cases, generally speaking, may be divided into five separate and distinct groups:

First is that class of cases wherein the state is a party and is enforcing its criminal laws. For example—where one converts property belonging to a non-complying foreign corporation, or embezzles its money. In that class of cases the courts have uniformly held that the defendant can not avail himself of a defense based upon the claim that he can not be prosecuted because the property belonged to a non-complying foreign corporation. In Ohio that proposition is decided in the

case of **State v Pohlmeyer, 59 Oh St 491,** and in Michigan it is decided in People v Hawkins, 109 Mich. 479.

The second class of cases is where the non-complying foreign corporation is seeking to recover its specific property, and while there is some conflict of opinion in this class of cases, it is almost universally held to be the rule that where the corporation brings an action ex delicto, and not based upon contract for the return of its specific property or money, that even though it is a non-complying foreign corporation it may maintain such an action and get relief. Two examples of that class of cases are: Rex Beach Picture Co. v Garson, 209 Mich. 692, and Pratt v Short, 79 N. Y. 437.

The third class is where parties contract with non-complying foreign corporations, and later seek relief from the corporation, in that class of cases the great weight of authority holds that relief can be granted against the non-complying foreign corporation. That proposition is discussed in the restatement of the law, Conflict of Laws, Section 179, page 263.

The fourth class of cases is where non-complying foreign corporations are engaged in public works and have given surety bonds for the faithful performance of the contract, and after breach, laborers and material men attempt to hold the surety. In this class of cases it is universally held that the laborers and material men can recover from the surety. The reason being that the laborers and material men could recover against the non-complying foreign corporation, and therefore they can recover against the surety.

The fifth class is cases such as the one here under consideration, wherein a non-complying foreign corporation attempts to assert some right based upon the principal contract. In those cases there is a very wide and marked conflict of opinion, but the law of Michigan is settled upon the subject, and the law of that state is that a non-complying foreign corporation can not recover in any action based upon contract. That principle is decided in 186 Mich. 453, and by other decisions of the courts of that state.

Counsel for the defendant insists that this court must follow the Supreme Court of Michigan as it stated the law in 186 Michigan; it is my opinion that this does not necessarily follow. If the contract between plaintiff and Samuels can be construed under the laws of Ohio, then this court is not bound to follow the Supreme Court of Michigan. On the other hand, if the contract between Samuels and the plaintiff must be construed under the law of Michigan, then the contention of the defendant's counsel is correct, and the court feels bound to follow the decisions of the Michigan courts.

It can not be denied that if this plaintiff could not have recovered against Samuels either in the courts of Michigan or the courts of Ohio, then this surety is not liable in this action. That proposition is almost universal, and has many times been declared by the Supreme Court of Ohio, and lastly in **State v Kuhner, 107 Oh St 406.**

This then brings us to a consideration of the contract between the plaintiff and Samuels and Gagnon. From what has already been said, it is clear that if this plaintiff sued Samuels and Gagnon in the courts of Michigan for the recovery of this money, the plaintiff could not prevail, and that leaves the question whether or not the plaintiff could prevail in the courts of Ohio if it brought an action against Samuels and Gagnon and had jurisdiction over their persons.

The facts as to the making of the contract with Samuels are not in dispute. Counsel for plaintiff, however, insists that this is an Ohio contract to be construed by the law of Ohio. The contract was between the plaintiff— an Ohio corporation—and Samuels—a resident of the state of Michigan—and there can be no question that the contract was to be performed in Michigan. By the law of that state, performance of the contract was illegal, and therefore there was no obligation to perform so long as the illegality continued.

As I understand the rule of construction it is that contracts are to be con-

138

strued in accordance with ■ ■ the law of the state of performance, and not in accordance with the law of the state wherein the contract was made.

It has been said that this contract at best was only a contract illegal because *malum prohibitum* and not because it was *malum in se*.

There is a very interesting discussion of this subject in 2 Elliott on Contracts, paragraph 665, in which the authority uses the following language:

"It is no doubt the general rule of law that no right of action can spring out of an illegal contract, and the rule that an illegal contract can not be enforced applies as well to contracts *malum prohibitum* as to contracts *malum in se*, but it does not necessarily follow that all the consequences attendant upon a contract which is contrary to public morals, or found to be on an immoral consideration tend to affect a contract *malum prohibitum* merely. The law in the former case will not undertake to relieve parties from the position in which they have placed themselves, or to adjust the equities between them, but in the latter case, while the law will not enforce the prohibited contract, it will take notice of the circumstances, and if justice and equity require restoration of money or property received by either party thereto, it will give, and in many cases has given relief."

For authority for that statement, the text-writer cites 180 Fed. 519.

It would seem that was an authority in favor of the plaintiff, and it would be if the courts of Michigan took the view taken by this text-writer, but the courts of Michigan have specifically held that they will not give any relief so far as restoration of money is concerned unless it would be in a case where the non-complying foreign corporation sued for specific money; but they would not give any relief in an action for money generally.

Something has been said in this case with regard to the harshness of this rule. The question of the harshness of the rule is not a question for the court. It might be observed, however, in passing, that the rule, even though it may seem harsh as applied in Michigan, is equally harsh in Ohio where the statute provides that a non-complying foreign corporation can not maintain any action in the courts of the state.

The plaintiff could not recover in this action against Samuels and Gagnon, or either of them in ■ ■ the courts of Ohio or in the courts of Michigan, it follows that the plaintiff can not recover against this defendant.

It is therefore my opinion that the motion to strike from the evidence the Michigan statute should be, and hereby is overruled; and the motion for a directed verdict in favor of the defendant should be, and is hereby granted.