ROUGH v. BREITUNG.

1. FOREIGN CORPORATIONS—NONPAYMENT OF FRANCHISE FEE.
   While the failure of a foreign corporation to pay the franchise fee required by Act No. 79, Pub. Acts 1893, renders void the contracts of such corporation made in this State, it does not affect the validity of its corporate existence.

2. CONTRACTS—EVIDENCE.
   Where the offer stated in a letter, and the telegram accepting it, are clear and unmistakable in their terms, they constitute a contract, which cannot be varied by evidence of prior negotiations.

3. SAME—CONSTRUCTION—FOREIGN CORPORATIONS—SALE OF ASSETS.
   Defendant wrote the president of a foreign mining corporation offering to take the mine operated by it, and all property belonging thereto, on terms stated, which included the assumption of the debts of the corporation, and the payment of a certain amount in mortgage bonds to its stockholders. The president accepted, and, with the secretary, assigned to defendant the mining lease owned by the company, and delivered over the corporate property. The stockholders retained their certificates, and made no tender of them to defendant till the close of the trial of an action brought by them upon the contract. *Held*, not a contract by the stockholders to sell capital stock, but a corporate one for the sale of corporate property, and within the statute making void all contracts of a foreign corporation in this State which has not paid the franchise fee required.[1]

4. CORPORATIONS—TITLE TO PROPERTY—STOCKHOLDERS.
   Title to corporate property being in the corporation, the stockholders, whether they act separately or collectively, cannot sell, mortgage, or convey it.

5. SAME—CERTIFICATES OF STOCK—NEGOTIABILITY.
   Certificates of stock, in the absence of statute to the contrary, stand upon the same basis as commercial paper, and innocent

---

[1] The validity of contracts made by foreign corporations which have not complied with statutory conditions of the right to do business in a State is considered, and the different theories discussed, with a review of the authorities, in a note to *Edison General Electric Co.* v. *Canadian Pacific Navigation Co.*, (Wash.) 24 L. R. A. 315.

purchasers and pledgees take title by assignment and delivery.

6. SAME—JOINT ACT OF STOCKHOLDERS—EVASION OF LAW.

The joint act or contract of the stockholders of a corporation, performed or entered into for the purpose of evading a law preventing the corporation from itself doing the act or making the contract, is likewise invalid.

Error to Marquette; Stone, J. Submitted February 5, 1898. Decided May 17, 1898.

*Assumpsit* by James H. Rough and others against Edward N. Breitung upon a contract of sale. From a judgment for defendant on verdict directed by the court, plaintiffs bring error. Affirmed.

The contract upon which this suit is based is evidenced by the following writings:

"CHICAGO, December 19, 1895.

"Mr. JAMES ROUGH, Mining Inspector,

"Negaunee, Michigan.

"*Dear Sir:* The parties I have will take the Davis Mine, and all the property, machinery, etc., belonging thereto, on the following terms: We will pay all the debts of the mining company as reported to me per statement of the secretary, Mr. Nightengale, and also those incidental debts that you mentioned in our conversation on my last trip to Negaunee, and give stockholders of Davis Mine, as it now stands, $3,000 in first-mortgage bonds, to be secured on all property of the Davis and Milwaukee Mines, said bonds to be made payable on or before six years from January 1, 1896, at 5 per cent. per annum. If you can accept these terms, let me know at once, so I can obtain coal and make necessary improvements. Telegraph me at once on receipt of this at Hotel Richelieu, so that I may know just what to do.

"Yours very truly,

"E. N. BREITUNG."

Telegram:

"December 20, 1895.

"E. N. BREITUNG,

"Care Hotel Richelieu, Chicago, Ills.:

"Letter received; will accept terms as stated in letter.

"JAMES H. ROUGH."

117 MICH.—4.

Telegram:

"CHICAGO, ILL., 12—20—95.
"To JAMES H. ROUGH,
          "Mine Inspector
    "Have your telegram of the 20th.  Will wire Rothwell
to take charge of Davis.  Send all the books and papers of
the Davis Mine to my office at Marquette.
                              "E. N. BREITUNG."

On December 20th, Rough and Nightengale delivered
to Mr. Breitung, at Marquette, the journal, time-book,
ledger, contract-book, record of unpaid bills, the seal,
stock-certificate book, containing the stubs of outstanding
certificates, and the certificates which had been transferred
by the company, canceled, and surrendered.  On the same
day the mining lease owned by the Davis Mining Com-
pany was assigned to Mr. Breitung in the following lan-
guage:

    "For a valuable consideration, the within lease is
assigned and transferred to E. N. Breitung, with all the
rights and interests thereto pertaining of the Davis Mining
Company.
    "In witness whereof the Davis Mining Company has
hereto affixed its corporate seal and signed its name by
its president and secretary.
                    "JAMES H. ROUGH, Pres.
                    "F. E. NIGHTENGALE, Secy."

Breitung went into actual possession of the mine, and
sent a check to the city treasurer for the payment of
taxes, signing it "Davis Mining Company, E. N. Brei-
tung, Secretary and Treasurer."  On December 28th de-
fendant wrote the cashier of the First National Bank:
"Personally I do not assume any of the liabilities of the
Davis Mine, but the Davis Mining Company, as it now
stands, assumes them.  Their address will be Marquette."
He also did other acts as secretary and treasurer of the
said company.  He had not been chosen as such, but
assumed to act by virtue of the transfer to him.  He con-
tinued in the actual possession of the mine until January
31, 1896, when he wrote, through his attorney, the follow-
ing letter to the Davis Mining Company:

"You will please take notice that I hereby rescind and refuse in any manner to be bound by an alleged agreement to purchase, on behalf of myself and others, the Davis Mine, for the reason that the said alleged agreement is entirely void for many reasons, and, among others, for the following: (1) Because the principal thing proposed to be sold was real estate, and the stockholders of the said company had not, nor have they yet, authorized or ratified the said agreement or the purported transfer of the real estate of said company, and therefore said agreement and purported transfer are absolutely void. (2) Because the said Davis Mining Company is a corporation organized under the laws of the State of Illinois, and has not filed or recorded its articles of association under the laws of this State, and been thereby authorized to do business therein, nor has it paid to the secretary of state a franchise fee of one-half of one mill upon each dollar of the authorized capital stock of such corporation, and therefore its contract is wholly void. You are further notified that the attachment suits commenced by the Negaunee Iron Company, Mary Kaufman, and myself against the said Davis Mining Company have been discontinued, and the sheriff is no longer in possession of any property of the said mining company. You are also notified that I am no longer in possession of the said mine, nor of any property connected therewith. I have already tendered you all the books, papers, and evidences of title of the said mining company, and I hold the same subject to your order, only because you have refused to accept the same, and I will at any time deliver the same to you, or send them to you, on your request. I have directed Mr. Matthews to keep the water out of the mine for one week from the date hereof, unless you shall sooner take possession of the property. I do this entirely for your accommodation.

"EDWARD N. BREITUNG,
"By Scott W. Shaull, His Attorney in Fact."

The Davis Mining Company was a foreign corporation, organized in Illinois on July 11, 1893. Its capital stock was $500,000, of which only $13,803 had been paid in. It was in debt about $20,000. Plaintiffs were the owners of the entire capital stock, and had been since 1893. Mr. Rough was president and Mr. Nightengale secretary. They had always done their business as a corporation.

Plaintiffs did not assign and transfer or tender to defendant the stock which they held until at the close of the trial, when they produced the certificates and offered to transfer them to defendant. The property of the Davis Mining Company consisted of a lease, executed by the fee owners to it, of whom Mr. Breitung was one, of the land on which the mine was situated, and the usual machinery, tools, etc., which constitute a mining plant. In 1893 the legislature passed an act requiring foreign corporations doing business in this State to pay a franchise fee, and provided: "All contracts made in this State after the first day of January, 1894, by any corporation which has not first complied with the provisions of this act, shall be wholly void." Act No. 79, Pub. Acts 1893. This fee had never been paid by the company.

When the plaintiffs had rested their case, the court directed a verdict for the defendant, because under the first count of the declaration, and under the undisputed evidence, plaintiffs were simply stockholders of the corporation, and, although owning all the capital stock, they were not owners of its property, which belonged to the corporation, and that as stockholders they did not possess the right or title to the property so that they could convey it. The court also held that there could be no recovery under the second count, because the evidence was undisputed that there was no sale of the capital stock, the Davis Mining Company was a necessary party to the litigation involving the sale of its property, and the corporation had never paid the franchise fee.

*F. A. Bell* (*Hayden & Young*, of counsel), for appellants.

*S. W. Shaull* (*Arch B. Eldredge* and *W. A. Lantz*, of counsel), for appellee.

GRANT, C. J. (*after stating the facts*). 1. The learned counsel for the plaintiffs state their claims under the two counts of the declaration, as follows:

"The first count is based upon the theory that the Davis Mining Company was not a legally organized corporation, and was designed to permit recovery by plaintiffs in case it should be found there was no such legally authorized incorporation, but only an association of individuals (themselves) under a corporate name.   The second count is based upon the theory that the Davis Mining Company was a corporation, at least *de facto*, all the capital stock of which was owned by the four plaintiffs.   Under each count the bargain claimed to have been made and carried out by actual delivery (the second count including the capital stock) was the same."

There is nothing in the record to sustain the theory that the Davis Mining Company was not a legally organized corporation, or that plaintiffs were doing business as tenants, partners, or in any other capacity than that of corporators.   They had only the powers and rights of stockholders. The company was duly incorporated, and had a president, secretary and treasurer, and board of directors.   It carried on its entire business and kept its books and records as a corporation.   It was not only a *de facto*, but a *de jure*, corporation.   The act of the legislature above referred to recognizes such a corporation as valid, and only declares its contracts void when made in this State before it has complied with the provisions of the law.   The court below was therefore right in holding that there could be no recovery under the first count.

2. Under the second count, it becomes necessary to determine what the contract was and with whom it was made.   The offer stated in the letter of December 19th, and the telegram accepting it, constitute the contract. Its terms are clear and unmistakable.   All prior conversations and negotiations, whether written or verbal, cannot be invoked to change the letter of the contract.   The defendant offered to buy "the Davis Mine, and all the property, machinery, etc., belonging thereto."   It was not an offer to buy the stock of the individual stockholders. This is further made clear by the proposed terms of payment, to wit, to pay all the debts of the mining company

and $3,000 to the stockholders. It meant a purchase of the franchise of the corporation, with all its rights and property. The letter was written to the president of the company. There is nothing in the record to indicate that the parties understood that the one was selling and the other was buying the stock of the plaintiffs. Their conduct at the time and subsequently clearly shows that they understood that they were acting in a corporate capacity, and not as individual stockholders. They retained their certificates of stock. They had previously attempted to sell defendant 12,000 shares of it, but he refused to purchase. They made no tender of the certificates until the close of the trial.

The original declaration was filed March 26, 1896, and was upon the common counts alone. Nothing further appears to have been done in the case until July 6, 1896, when plaintiffs filed an amended declaration containing a special count setting forth that they were the owners of the property, and describing it, and that they had sold it to the defendant for $26,000. To this amended declaration the defendant pleaded the general issue. Subsequently, by the permission of the court, he filed an amended plea, giving the special matters in defense as stated in his letter of January 31, 1896. Plaintiffs, by leave of the court, on March 20, 1897, filed a second amended declaration, in which for the first time they alleged a sale of the stock.

There was no corporate action taken by the stockholders or by the directors authorizing the transaction. The assignment of the lease was made by the president and secretary in behalf of the corporation, and on the face of it was a corporate act. Stockholders do not own the corporate property, and cannot mortgage, sell, or convey it. The title is in the artificial being called the corporation, not in the stockholders. Such property is not under the control of its stockholders, whether they act separately or collectively. The laws under which these corporations are organized provide the agencies and methods by which

their property can be sold and transferred. *Randall* v. *Dudley*, 111 Mich. 437; *Humphreys* v. *McKissock*, 140 U. S. 304; *Fitzgerald* v. *Railway Co.*, 45 Fed. 812; *England* v. *Dearborn*, 141 Mass. 590; *Button* v. *Hoffman*, 61 Wis. 20 (50 Am. Rep. 131); *Baldwin* v. *Canfield*, 26 Minn. 43; *Gashwiler* v. *Willis*, 33 Cal. 11 (91 Am. Dec. 607). In *Smith* v. *Hurd*, 12 Metc. (Mass.) 371 (46 Am. Dec. 690), Chief Justice Shaw said:

"The individual members of a corporation, whether they should all join, or each act severally, have no right or power to intermeddle with the property or concerns of the bank, or call any officer, agent, or servant to account, or discharge them from any liability. Should all the stockholders join in a power of attorney to any one, he could not take possession of any real or personal estate, any security or chose in action; could not collect a debt, or discharge a claim, or release damage arising from any default; simply because they are not the legal owners of the property, and damage done to such property is not an injury to them. Their rights and their powers are limited and well defined."

In *Button* v. *Hoffman* the court say:

"These general principles sufficiently establish the doctrine that the owner of all the capital stock of a corporation does not, therefore, own its property, or any of it, and does not himself become the corporation, as a natural person, to own its property and do its business in his own name. While the corporation exists he is a mere stockholder of it, and nothing else."

The artificial being known as the Davis Mining Company was still in existence after the alleged sale and transfer to defendant. The transfer of the stock-book to him, either individually or as secretary of the company, did not operate to cancel the stock standing in the names of these plaintiffs. They might have sold the stock to an innocent purchaser, who would take a good title. Such certificates, in the absence of some provision of law to the contrary, stand upon the same basis as commercial paper, and innocent purchasers and pledgees take title by assignment and delivery. *McLean* v. *Charles Wright*

*Medicine Co.*, 96 Mich. 479, and authorities there cited.

We are forced to the conclusion from this record that this was a corporate contract, and void under the law above cited. While the corporation might be estopped to plead such a contract in its defense, it cannot maintain an action upon it without annulling the law. *Seamans* v. *Temple Co.*, 105 Mich. 400 (28 L. R. A. 430, 55 Am. St. Rep. 457); *People's Mut. Ben. Society* v. *Lester*, 105 Mich. 716; *People* v. *Hawkins*, 106 Mich. 482.

3. If, however, all the stockholders of the corporation could by unanimous action contract, instead of the corporation, acting through its properly authorized officers, it would not aid the plaintiffs. What such a corporation could not do in its corporate capacity all its stockholders acting together could not do for it. If the act or contract of the corporation is void under the law, so, also, is the joint act or contract of all the stockholders, designed to accomplish the same purpose, and thus evade the law.

The judgment is affirmed.

The other Justices concurred.