ROBINSON *v.* TABER.

1. TAXATION—DELINQUENT TAX LIST—FAILURE OF TREASURER TO FILE SWORN STATEMENT—EFFECT.

    The failure of a township treasurer, in making his return to the county treasurer for unpaid taxes, to make the sworn statement required by law relative to such taxes, was not fatal so as to prevent the collection of taxes.

2. CORPORATIONS—POWER OF STOCKHOLDERS—AUTHORITY TO MAKE CONVEYANCES.

    The property of a corporation is not subject to the control of the stockholders and may not be conveyed by them, even though those joining in the conveyance own nearly all the stock.

Error to Ogemaw; Sharpe, J. Submitted October 17, 1917. (Docket No. 166.) Decided December 27, 1917.

Replevin by Samuel A. Robinson against Charles Taber, treasurer of Goodar township, and another, for property levied on for taxes. Judgment for defendants. Plaintiff ·brings error. Affirmed.

*Victor Spike* (*Gillett & Clark,* of counsel), for appellant.

*William T. Yeo,* for appellees.

In the spring of 1915, plaintiff was the supervisor of Goodar township. At the same time he was secretary and a director of the Robinson Lumber Company, and was likewise the owner of nearly one-half of the capital stock of said corporation. That company was conducting operations in Goodar township. Acting as supervisor of his township, plaintiff assessed the personal property of the Robinson Lumber Company in that township at the sum of $27,000. Included in that assessment is the following item:

    All machinery not affixed to real property, two
      locomotives and railroad equipment..........$3,000.00

The amount of the tax against the Robinson Lumber Company so assessed was $766.64. The township treasurer in making his return to the county treasurer for unpaid taxes for that year failed to make the sworn statement required by law relative to said taxes. The county treasurer, however, gave him a warrant back for the collection of such taxes and this warrant was turned over by him to his successor, the defendant Taber. On September 13, 1916, Taber, as such treasurer, levied on the two locomotives and certain other railroad equipment for the purpose of enforcing the collec-

tion of such taxes, and while the same was in the possession of said treasurer and after it had been advertised by him for sale, it was taken, on September 20th, by the sheriff under the writ of replevin in this case.

While the record does not disclose the fact, it is apparent that defendants waived a return of the property, and they were awarded a judgment for the amount of the special interest therein, representing the tax lien, in the sum of $798.88.

It was the claim of plaintiff that, while the property seized was, at the time the assessment was made, the property of the Robinson Lumber Company, title thereto had, between the time of the assessment and the date of the seizure, passed from said company to himself. This claim is based upon the following facts:

On the 16th day of March, 1914, S. L. Eastman, who then owned 235 shares of the Robinson Lumber Company stock, and the plaintiff who owned 230 shares thereof, having had some differences, met at the office of Gillett & Clark in Bay City, and there undertook an adjustment of their difficulties. At that time there was at least one other stockholder, W. H. Erwin, who was vice president and a director of the Robinson Lumber Company. Without notice to Erwin, or any waiver from him, so far as the record shows, an alleged stockholders' meeting was held, where a resolution was passed, instructing the directors of said company to hold a meeting and empowering them to—

"formulate an agreement agreeable to all shareholders and directors of said company for the final closing up of the affairs of the Robinson Lumber Company of Goodar, Ogemaw county, Mich., authorizing the president and secretary to assign, transfer, or deed any or all the property of said company necessary for the payment of the obligations of said company."

On the same day an alleged meeting of the directors

of the Robinson Lumber Company was held by East-
man and plaintiff, without notice to or waiver from Di-
rector Erwin. At said meeting a resolution was
passed by Eastman and Robinson, by the terms of
which Mr. Gillett was employed to draft an agree-
ment in behalf of said company, S. L. Eastman, and S.
A. Robinson, preparatory to the dissolution of said
Robinson Lumber Company and following the passage
of said resolution an agreement was prepared between
the Robinson Lumber Company of the first part, and
S. L. Eastman and William H. Erwin of the second
part, and S. A. Robinson of the third part. This
agreement provides for the operation of the mill be-
longing to the company by Robinson at a certain price
per thousand feet, and that the net proceeds of the
lumber should be used for the payment and retirement
of the obligations of the Robinson Lumber Company.
The agreement then proceeds:

"The foregoing arrangement is made as an adjust-
ment of all differences between the parties, and as a
preliminary step towards the liquidation of the affairs
of the company, in the following manner."

Then follows several provisions as to the disposition
of the various portions of the property of the corpora-
tion, and it is further provided:

"It is further mutually understood and agreed that
the affairs of the company shall be liquidated as soon
as the logs now cut are manufactured, and the sawing
contract completed, but not later, however, than No-
vember 1st, by the formal conveyance to the parties
hereto of the properties hereinbefore mentioned, and
by the assumption by the said Eastman of any out-
standing obligations and debts of the said Robinson
Lumber Company."

This contract is executed by neither Director Wil-
liam H. Erwin nor the Robinson Lumber Company,
but it is executed by S. L. Eastman and plaintiff Sam-
uel A. Robinson. By the terms of the contract the prop-

erty here in question was to be conveyed to Eastman. It is the claim of plaintiff that said personal property was conveyed by the corporation to Eastman, although no instrument of conveyance was produced. He did, however, produce a bill of sale from Eastman to himself covering the property in question and bearing date of the 3d day of November, 1915.

BROOKE, J. (*after stating the facts*). The learned circuit judge held that the failure of the township treasurer to make the sworn statement required by law was not fatal, under the authority of *Northwestern Cooperage & Lumber Co.* v. *Scott,* 123 Mich. 357 (82 N. W. 76). In this we think he was correct.

He next held that the title to the property on which the levy was made was, at the time of the levy, the property of the Robinson Lumber Company, and as such liable to seizure for the payment of the corporate taxes. This conclusion was reached upon the theory that the contract of March 16, 1914, executed by two of the stockholders only, in their individual capacity, did not constitute a legal authority for the sale or conveyance of the property of the corporation, and that, if such sale was made in pursuance of said contract, it was void as against the tax levy. Upon this point the learned circuit judge cited and relied upon *Rough* v. *Breitung,* 117 Mich. 48 (75 N. W. 147), where it is said:

"Stockholders do not own the corporate property, and cannot mortgage, sell, or convey it. The title is in the artificial being called the corporation, not in the stockholders. Such property is not under the control of its stockholders, whether they act separately or collectively. The laws under which these corporations are organized provide the agencies and methods by which their property can be sold and transferred."

Many cases are cited in support of the principle announced, among them *Randall* v. *Dudley,* 111 Mich. 437 (69 N. W. 729), where it is said:

"The mere fact that one has become the owner of all the stock of a private corporation does not entitle him to sue in his own name upon an account stated with the corporation, but his succession to its interests must be averred and proved."

Again in *Chase* v. *Telephone Co.*, 121 Mich. 631 (80 N. W. 717), this court said:

"Although one person owns a majority of the stock, or all but two shares, or all of it, he does not thereby acquire the right of acting for the corporation, or as the corporation, independently of the directors." Citing cases.

The question has been repeatedly before the Supreme Court of the United States. See *Pullman's Palace Car Co.* v. *Railway Co.*, 115 U. S. 587 (6 Sup. Ct. 194). And in *Humphreys* v. *McKissock,* 140 U. S. 304 (11 Sup. Ct. 779), that court says:

"The property of a corporation is not subject to the control of individual members, whether acting separately or jointly. They can neither encumber nor transfer that property, nor authorize others to do so."

We are of opinion that the corporation never legally authorized the sale of its property to Eastman, and therefore that plaintiff acquired no title thereto through the bill of sale from Eastman.

Judgment is affirmed.

KUHN, C. J., and STONE, OSTRANDER, BIRD, MOORE, STEERE, and FELLOWS, JJ., concurred.