DICKINSON ISLAND LAND CO. *v.* HILL.

1. CORPORATIONS—TRANSFER OF PROPERTY—PRINCIPAL AND AGENT.
   The property interest of a corporation can only be transferred by its board of directors or some one duly authorized to act for it.

2. TRESPASS—CONTRACT TO PURCHASE LAND SUBJECT TO APPROVAL—INJUNCTION.
   Where defendants had negotiated with a selling agent for the purchase of certain lots subject to the approval of the corporation owning the same, they were properly restrained as trespassers in going upon the land and cutting and removing timber thereon before said approval was given, although they had been assured by said agent that approval would be given.

Appeal from St. Clair; Tappan (Harvey), J. Submitted January 22, 1920. (Docket No. 78.) Decided April 10, 1920.

Bill by the Dickinson Island Land Company against Edward E. Hill and another to enjoin a trespass upon

land, and for an accounting. From a decree for plaintiff, defendants appeal. Affirmed.

*Walsh & Walsh (William Friedman,* of counsel), for plaintiff.

*Fitzgibbon & Quail* and *Charles C. Stewart,* for defendants.

SHARPE, J. The Dickinson Island Land Company became the owner of a part of Dickinson island, at the mouth of the St. Clair river, in January, 1917. Its board of directors entered into an oral agreement with Ben V. Jacobs and Julius Berman, two of their number, who were real estate men, to sell the lots on commission. They in turn hired one Andrew L. Arthur as sales manager. He was to receive a part of their commission for his services. The cheaper lots were to be sold for cash, and the others on a 50 per cent. down payment. Arthur opened an office in the Bowles building in Detroit, advertising himself as sales manager, Dickinson Island Land Company.

The defendant Hill called at Arthur's office, and met Arthur and Elon J. Dwyer, Berman's partner in business and one of the directors of the company. After some negotiation, he paid Arthur $250 and received the following receipt:

"DETROIT, MICH., Sept. 8, 1917.

"Received of Edward E. Hill, two hundred and fifty dollars to apply on contract to be drawn this day, balance of contract two hundred and fifty dollars ($250), to be paid when property is staked out.

"Above contract subject to approval of directors.

"DICKINSON ISLAND LAND CO.,

"Per A. L. ARTHUR."

There was much discussion about the down payment, but Arthur assured Hill that he would endeavor to get the board of directors to approve it. The board at that time consisted of Jacobs, Berman, Friedman,

Lipson and Marshall, five of the original incorporators. On September 10th, an agreement for a contract was prepared by Arthur and submitted to Hill. It provided that the corporation would enter into a land contract for the sale to Hill of lots of the value of $11,150; that a further down payment of $250 should be made on the completion of a survey of the lots, and the balance be paid within one year. It permitted Hill to cut, remove and dispose of all timber on the streets bounding the lots included in his purchase. In the last paragraph, it provided that all moneys received by Hill on the sale of timber should be applied on the purchase price. To this Hill objected. He claims that, after telephoning, Arthur told him that Jacobs would see Berman and for him to come in again. He did so the same day, and was told by Arthur that Friedman "was the only man who kicked on it," but that the board had authorized the contract. Arthur denies this. He says he struck out the paragraph on the authority of Berman. This contract was signed by Arthur as sales manager of the company and Hill. On October 26th, Arthur notified Hill to come in and make the additional $250 payment. He did so and received a receipt in which appeared: "Contract to be executed at once." Arthur testified that he then told Hill—

"there was a very strong objection on the part of Mr. Friedman to entering into that contract; that he was objecting strongly to it and I had the assurance of Berman and Jacobs that the contract would go through, and he paid the $250 and said that he would take his chance on getting the contract."

While Hill does not admit this conversation as stated by Arthur, he does say that Arthur "said that Friedman still insisted he didn't want to go through with it, something like that."

Hill, in the meantime, had associated the defendant

Harsen with him in the purchase. It is their claim that, relying on these writings, they went to an expense of about $3,000, fitting up camps and getting horses and machinery for taking off the timber on the streets, that they had sold about $2,500 worth. of wood, and were in full operation when stopped by the injunction issued on the filing of the bill of complaint herein.

It is unnecessary for us to enter into any discussion of the express or implied power of Arthur as an agent to bind the company. The defendant Hill knew that he did not assume to have or exercise such authority. He relied entirely, as he admits, on Arthur's assurance that the board would approve of the terms of the agreement of September 10th and give him a contract in conformity therewith. Consideration need therefore only be given to the occurrences on and after that date.

Jacobs and Berman, as well as Arthur, were financially interested in having the sale consummated. It is apparent that they were hopeful they could secure the approval of the other members of the board. But, unless we assume facts not established by the proofs, or draw inferences not justified by the acts and conduct of the parties, the board of directors never assented to this sale. Jacob N. Marshall, one of the original incorporators and a director in 1917, testified that he had no knowledge of the Hill contract of September 10th until the board met in February when the cutting of the timber was discussed. The writing Hill received on September 10th was not a contract for the sale of the land, but an agreement on the part of the company, signed by Arthur as sales manager, that a contract would be made on the completion of the survey and on Hill's making the additional down payment. When this was made on October 26th, the receipt given defendants by Arthur stated: "Contract to be executed at once." The defendants should have

awaited the receipt of such contract before beginning their operations on the land. They knew that some of the directors had theretofore objected to the sale on account of the small down payment, and when they began work in reliance on the assurances of Arthur that they would get a contract they acted at their peril. We have no doubt of their good faith in the matter, but the property interest of a corporation can only be transferred by its board of directors or some one duly authorized to act for it. *Lawrence* v. *Theater Co.*, 190 Mich. 44; *Robinson* v. *Taber*, 198 Mich. 767, and cases cited. The receipt given Hill when he made the first payment advised him that his contemplated purchase was subject to the approval of the board of directors. The delay in closing the deal was due to the lack of such approval. This the defendant Hill well knew, and in proceeding with his work before obtaining a contract with the board, or its approval of that of September 10th, executed by Arthur, Hill and his codefendant became trespassers, and the decree of the circuit court restraining further action on their part was justified and must be affirmed, with costs to plaintiff.

MOORE, C. J., and STEERE, BROOKE, FELLOWS, STONE, CLARK, and BIRD, JJ., concurred.