## LOUIS ILFELD CO. v. UNION PAC. R. CO.

Circuit Court of Appeals, Eighth Circuit.
December 2, 1927.

No. 7769.

Corporations ⟨⟩661(2)—Contracts by foreign corporations not complying with state laws, unless made void by statute, may be enforced in federal courts (Const. Wyo. art. 10, § 5; Comp. St. Wyo. 1920, § 5074).

Where the Constitution and statutes of a state such as Wyoming (Const. art. 10, § 5; Comp. St. 1920, § 5074) prohibit foreign corporations from doing business in the state without first complying with their requirements, but do not undertake to make void contracts made in the state without such compliance though the state courts may refuse to enforce such contracts, that fact will not prevent their enforcement in the federal courts.

23 F.(2d)—5

In Error to the District Court of the United States for the District of Wyoming; T. Blake Kennedy, Judge.

Action at law by the Louis Ilfeld Company against the Union Pacific Railroad Company. Judgment for defendant, and plaintiff brings error. Reversed and remanded.

Albert L. Vogl, of Denver, Colo. (Marion A. Kline, of Cheyenne, Wyo., on the brief), for plaintiff in error.

Herbert V. Lacey, of Cheyenne, Wyo. (John W. Lacey, of Cheyenne, Wyo., on the brief), for defendant in error.

Before LEWIS, Circuit Judge, and POLLOCK and SCOTT, District Judges.

LEWIS, Circuit Judge. In this case plaintiff in error, a New Mexico corporation, brought its action against defendant in error, a Utah corporation, to recover damages resulting, as claimed, from a shipment of dry pelts over the defendant's railway from Rock Springs, Wyoming, to Rawlins, Wyoming. It is alleged that the Rock Springs Hide & Fur Company sold to plaintiff 23,423 pounds of dry pelts f. o. b. cars at Rock Springs, that said Hide & Fur Company caused said pelts to be loaded loose in bulk in a car furnished by the defendant for that purpose, and that the car containing said 23,423 pounds was delivered to defendant as a common carrier at Rock Springs to be transported by defendant and delivered by it to plaintiff at plaintiff's warehouse at Rawlins, that defendant issued its bill of lading reciting that it had received for shipment, consigned to plaintiff as stated, a carload of dry pelts and that the net weight of the dry pelts was 23,423 pounds. It is further alleged that the bill of lading and the original invoice which recited the sale by the Hide & Fur Company to plaintiff of the 23,423 pounds of dry pelts at 29 cents a pound was forwarded to plaintiff and plaintiff paid $6,792.67, the amount of the sight draft drawn on it in payment for said pelts, that defendant failed to transport and deliver the 23,423 pounds of pelts to plaintiff and delivered only 9,059 pounds thereof, but required the plaintiff to pay transportation charges on the 23,423 pounds, that plaintiff is the holder of the bill of lading for said shipment and that it suffered damages by reason of the facts stated, in the sum of $4,686.60, for which amount it asked judgment.

The defendant in its answer admitted the receipt of 9,059 pounds of pelts at Rock Springs, alleged that it transported and de-

livered them to defendant at Rawlins. It alleged that the defendant placed on the bill of lading the letters "S. L. C. & W.," which were well known to plaintiff and its agents to be an abbreviation for the words, "Shipper's load, count and weight," clearly indicating that the defendant had not inspected, nor counted, nor loaded, nor weighed the shipment, that the shipment was loaded, counted and weighed by the shipper alone, that no one except the shipper had any knowledge in that respect; and that the bill of lading so marked with said letters was accepted and received by the shipper without objection or protest.

As a second defense the answer set up failure of plaintiff to comply with the constitution and statute of the State of Wyoming permitting foreign corporations to transact business in the State of Wyoming, and because of that failure it was alleged plaintiff had no enforceable rights growing out of the shipment.

In its replication plaintiff denied any knowledge on its part at the time the bill of lading was issued that it had thereon the letters "S. L. C. & W.," denied they had any meaning further than that the defendant had received substantially the amount of goods specified in the bill of lading and it would not be responsible for failure to deliver the exact quantity named therein if it delivered substantially the quantity so specified and delivered all it had received. In its reply to the second defense plaintiff alleged that the shipment in question was a part of plaintiff's interstate business, that it leased a warehouse in Rawlins and placed an agent in charge thereof for the temporary purpose of there collecting pelts or hides which it might purchase in Wyoming, all of which after being collected were to be shipped out by it into other States, that there was no market at Rawlins in hides and pelts, and that the transaction in question was a part of and incidental to interstate commerce.

After the court overruled plaintiff's demurrer to the second defense the defendant moved for judgment on the pleadings, which was sustained. Thereupon this writ of error was sued out. The court filed a written opinion in sustaining the demurrer, wherein it held that plaintiff's admitted failure to comply with the constitution and statute of Wyoming left it without the right to maintain this action; and that is the issue presented here.

The provisions of the constitution and statutes on the subject are these:

Article 10, § 5, Wyoming constitution:

"No corporation organized under the laws of Wyoming Territory or any other jurisdiction than this State, shall be permitted to transact business in this State until it shall have accepted the constitution of this State and filed such acceptance in accordance with the laws thereof."

Section 5074, Wyoming Compiled Statutes 1920:

"No corporation organized under the laws of Wyoming Territory, or any other jurisdiction than the State of Wyoming, shall be permitted to transact business in this State until it shall have accepted the constitution of this State. Such acceptance shall be executed and acknowledged in all respects in the manner provided by the laws of Wyoming and the by-laws of the corporation accepting the constitution, for the execution of deeds, and when duly executed shall be filed and recorded in the office of the secretary of state, and it shall be the duty of the secretary of state, upon the filing of any acceptance of the constitution duly executed, to note on the margin of the record of the certificate of incorporation of the corporation filing the same the fact that such acceptance is filed, which notation shall also refer to the book and page wherein appears the record of such acceptance: Provided, however, that every acceptance of the constitution of this State by any corporation, railroad or other company, executed and filed in the office of the secretary of state prior to the ninth day of January, one thousand eight hundred and ninety-one, which is signed by one or more of the principal officers of such corporation, and has the corporate seal of such corporation affixed thereto, is hereby legalized and shall have the same force and effect in all respects as if the same had been executed and filed in conformity with the requirements of this section."

We think it obvious that the ruling of the court was wrong, if we give attention only to the terms of the State constitution and statute. They do not declare contracts made within the State by non-complying corporations to be void obligations, or even voidable. No contention of that kind is made by counsel for defendant in error. They argue, however, that the Supreme Court of that State has construed these provisions, and that that construction, which must be accepted by the Federal court, prevents recovery by the plaintiff. But it is not claimed those decisions hold contracts made by a non-complying corporation void transactions. It is argued that such transactions were held voidable by the State supreme court, and being voidable at the

option of defendant the effect is equivalent to a holding that they were absolutely void. The decisions relied on are found in Gould Land & Cattle Co. v. Rocky Mountain Bell Telephone Co., 17 Wyo. 507, 101 P. 939, and Interstate Construction Co. v. Lakeview Canal Co., 31 Wyo. 191, 224 P. 850. In the first case excerpts can be found in the opinion which tend to support the contention of counsel for defendant in error. They constitute the argumentative part of the opinion on which the final conclusion of the court rested. Contrary excerpts indicating that the court was not of the opinion that the contract was either void or voidable may also be found. In the Gould Land & Cattle Co. Case the court said: "The matter pleaded in the second defense [failure of plaintiff to comply with the statute] went to the question as to whether plaintiff had any legal standing in court. This question also involves the validity or invalidity of the contract, for, if nonenforceable in this jurisdiction as against the plea in bar, it is everywhere nonenforceable as against such plea." But it was plaintiff's standing in the State court which was then under consideration. The court was not concerned with its standing in any other court; and that court knew the settled rule that unless the contract was made void by the terms of the constitution and statute, or by decision of the highest court of the State holding that the constitution or statute made it void, still a plaintiff could sue in a Federal court, notwithstanding he might be denied that right in the State court. It would have been going far in either of those cases to have said that the constitution and statute rendered the contract void; and the court refrained from so deciding. In fact the court said: "* * * In the absence of a statute expressly declaring them to be void, they are not void, but as against such corporation voidable by a plea in bar;" and that the plea might be interposed or waived. It rather accepted both provisions at their face and said because of them the contracts would not be enforced in the Wyoming courts. That was short of construing them or interpreting their meaning. The court in the first case seemed to be concerned with the rule of comity and the State's policy declared by the constitution and statute, and whether under that rule and policy a foreign corporation was entitled to sue in the State court. There would have been no occasion to consider the questions of comity and public policy if the court were of opinion constitution and statute rendered the contract void. It quoted from Seamans v. Temple Co., 105 Mich. 400,

63 N. W. 408, 28 L. R. A. 430, 55 Am. St. Rep. 457: "The doctrine of state comity will not be applied in behalf of a foreign corporation seeking to recover upon a claim or contract expressly prohibited by law, or one which is clearly at variance with the settled policy of the state;" and again from Rough v. Breitung, 117 Mich. 48, 75 N. W. 147, to the effect that there is no remedy equally effective to compel obedience to conditions of admission as to hold such contracts to be unenforceable. Finally the court stated the ground of its holding to be this: "Upon the record we are forced to the conclusion that the contract, damages for breach of which are sought, was a corporation contract nonenforceable as against the second defense under the law and the decisions above cited." The later case follows the prior one. It was said, in reference to the prior case: "The court held that the constitutional and statutory provisions above mentioned are mandatory and make unlawful, voidable, and unenforceable all contracts entered into in this state in violation thereof." In conclusion the court in the later case said: "It must be clear, from what we have said, that we must hold the claim of the appellant unenforceable unless we overrule the Gould Case, supra."

We think it clear that the court, in both of these cases, held, and only held, that a claim arising out of business transacted in the State by a foreign corporation which had not complied with the State statute and constitution was nonenforceable in the courts of the State. What was said by the court in the later case, about the transaction being unlawful and voidable, was said by way of argument and as reasons for the conclusion that such a contract was not enforceable. The transactions were, of course, unlawful in the sense that a failure to comply with the requirement of the constitution and statute was unlawful; and they were voidable in the sense that the obligation could not be enforced there against a defendant who plead noncompliance with the requirements. And thus it seems clear that neither the constitution nor the statute, in their terms, nor by the construction put upon them by the State supreme court, declares or attempts to render the contractual obligations absolutely void. Plainly, there was no such purpose in the minds of the framers of the constitution, or of the legislature. Neither declares or attempts to declare how the contract will be affected. They are both directed to the prevention of the transaction of business by such a corporation, without any intimation or

suggestion as to the effect thereof on the validity of the contract under which the business was transacted. The opinion in each of those cases was written with that fact in mind, and hence the conclusion in each went no further than to hold that the obligation under which the business was transacted was nonenforceable in the courts of the State that adopted the constitution and enacted the statute. In David Lupton's Sons v. Auto Club, 225 U. S. 489, 32 S. Ct. 711, 56 L. Ed. 1177, Ann. Cas. 1914a, 699, the plaintiff's claim was based on transactions pursuant to contract performed in the State of New York. It was a foreign corporation and had not complied with the State's statute, which denied it the right to maintain an action in the State because of its noncompliance. It was held that the plaintiff could maintain its action in the Federal court, that the statute not having struck down the obligation itself and declared it absolutely void, the State was without power to declare when a right of action was or was not maintainable in any other court. Cases maintaining the rule in this and other circuits are, Blodgett v. Lanyon Zinc Co., 120 F. 893; Boatmen's Bank v. Fritzlen, 221 F. 154; Ockenfels v. Boyd, 297 F. 614; Johnson v. New York Breweries Co., 178 F. 513; Bradford v. Ind. Harbor Belt R. Co., 16 F.(2d) 836. We have taken the point as counsel put it—liability upon an express contract of shipment made with a foreign corporation, though a bill of lading is not a requisite to the liability of the carrier as an insurer, which the law raises; but in that case the plaintiff must show actual delivery and loss.

Plaintiff in error complains of the action of the court in overruling its motion to strike that part of the answer which plead receipt by defendant for shipment of only 9059 lbs. of pelts and that it was relieved from liability for any more because of the letters "S. L. C. & W." on the bill of lading. The allegations in the answer in that respect are in part these:

"The defendant alleges that the plaintiff was the consignor as well as the consignee of said pelts, and that as plaintiff well knew at the time said shipment was delivered to the defendant only 9059 lbs. of pelts were delivered to the defendant for shipment, and that the agent of this defendant before executing the bill of lading covering said shipment and before said shipment was delivered to this defendant placed on said bill of lading in a prominent and conspicuous manner and place the letters 'S. L. C. & W.' * * * and that said letters were to the shipping public and to all persons familiar with shipping goods and merchandise by freight and to this defendant and its agent and to the plaintiff and to each and all of its agents known to be an abbreviation for the words 'Shipper's load, count and weight,' and known to indicate and affirm and mean that this defendant had not inspected nor counted, nor weighed the said shipment nor any part thereof; and that said shipment was received with and upon the specific understanding expressed in writing upon said bill of lading that no reliance was to be placed by any one on any statement in the bill of lading concerning the character or the weight or the amount or the quantity or the value of said shipment, or either or any of them, or the number of articles included in said shipment, and that the defendant had no knowledge concerning the character, weight, amount, value or quantity of said shipment or either or any of them, or concerning the number of articles included in said shipment, and that said shipment was loaded, counted and weighed by the shipper alone and that no one except the shipper had any knowledge concerning said shipment. The defendant alleges that the bill of lading so conspicuously marked with the letters aforesaid was without objection or protest accepted and received by the shipper prior to the delivery of said shipment to this defendant."

Counsel for plaintiff in error bases his argument that these allegations constituted no defense and that the court erred in overruling its motion to strike, on sections 4366 and 4367 Wyoming Compiled Statutes 1920. These sections declare it to be unlawful and a criminal offense for any carrier, or any officer, agent or servant of a carrier to issue a bill of lading "until the whole of the property as described therein shall have been actually received and is at the time under the actual control of such carrier, to be transported." They further provide that if a bill of lading be issued in violation of the requirements of the statute the carrier "shall be estopped, as against all and every person or persons injured thereby who shall acquire any such false or duplicate bill of lading in good faith and for value, to deny the receipt of the property as described therein; * * * and such issuing carrier shall be liable to any and every such person for all damages, immediate or consequential, which he or they may have sustained because of reliance upon such bill whether the person or persons guilty of issuing or negotiating such bill shall have been convicted under this section or not." Taking the allegations of the an-

swer to be true, as the lower court was required to do on considering the motion to strike, we think there was no error in denying the motion. If, as alleged, the plaintiff was both consignor and consignee of the shipment, knew that only 9059 lbs. of pelts were delivered, knew the bill of lading when delivered contained the four letters and the meaning attributed to them in the answer, then we do not think the plaintiff is in a position to take advantage of the estoppel which the statute raises against the carrier. It cannot say, if the facts alleged be true, that it acquired the bill of lading in good faith and for value and that the damages which it claims to have suffered accrued because of its reliance on that part of the bill of lading which stated that the shipment contained 23,423 lbs. of pelts. A litigant must bring himself within the terms of a statute before he can claim its protection.

In view of what has been said it seems the question whether the shipment was interor intrastate is an immaterial one.

The order sustaining defendant's motion for judgment is reversed and the cause remanded for further procedure.

SCOTT, District Judge, concurs in the result.