In the Matter of Bartolo PISCITELLO Bart Lincoln Mercury, Inc. Bart Investments, Inc., Debtor.

Paul BOROCK, Trustee, Plaintiff,

v.

MICHIGAN NATIONAL BANK OF DETROIT and Ann Piscitello, Defendants.

MICHIGAN NATIONAL BANK, Third-Party Plaintiff,

v.

Bartolo PISCITELLO, Third-Party Defendant.

Bankruptcy Nos. 84–02943–B, 84–02944–B and 84–02947–B. Adv. No. 84–1125–B.

United States Bankruptcy Court, E.D. Michigan, S.D.

Dec. 11, 1986.

Dougherty & Schneider by Kenneth M. Schneider, Detroit, Mich., for trustee.

Buesser, Buesser, Blank, Lynch, Fryhoff & Graham by William O. Lynch, Bloomfield Hills, Mich., for Ann Piscitello.

Hammond Ziegelman Roach & Sotiroff, P.C. by Lawrence R. Abramczyk, Detroit, Mich., for Michigan Nat. Bank.

## MEMORANDUM OPINION

GEORGE BRODY, Chief Judge.

This is an action instituted by the trustee of Bart Lincoln Mercury to avoid a security interest of the Michigan National Bank in property of the estate of the debtor. The facts have been stipulated and are as follows:

1. Debtor Bart Lincoln Mercury, Inc. ("Bart Lincoln Mercury") is a Michigan corporation, formerly having offices at 3400 East Jefferson Avenue, Detroit, Michigan.

2. From the inception of its operations in 1962, through the date of termination of its operations in early October, 1979, Bart Lincoln Mercury was a Lincoln-Mercury dealer, engaged in the sale and servicing of new and used automobiles and related parts.

3. Bart Lincoln Mercury was an authorized vendor of Ford Motor Company's Lincoln and Mercury product line pursuant to the terms and conditions of a Lincoln Franchise Agreement, Mercury Franchise Agreement and a related Parts and Service Agreement.

4. Debtor Bartolo Piscitello ("Piscitello") has always been the sole shareholder of all the outstanding stock of Bart Lincoln Mercury.

5. During the period of its operations, Bart Lincoln Mercury engaged in floor-plan financing with the Ford Motor Credit Company, a wholly-owned subsidiary of the Ford Motor Company.

6. By letter dated June 20, 1979 Bart Lincoln Mercury, by its President, Piscitello, advised the Ford Motor Company of the termination of Bart Lincoln Mercury's Lincoln Franchise Agreement, Mercury Franchise Agreement and the related Parts and Service Agreement. Ford Motor Company contends, however, that Bart Lincoln Mercury rescinded the claimed June 20, 1979 termination.

7. In conjunction with the termination of its dealership activities, on October 9, 1979 Bart Lincoln Mercury sold to Ralph Vigliotti Realty, Inc. the dealership buildings and real estate.

8. The proceeds from Bart Lincoln Mercury's foregoing sale of real estate were disbursed as follows: (i) $1,475,792.66 to Michigan National Bank of Detroit ("Michigan National Bank") in payment of outstanding mortgages which encumbered the dealership real estate and (ii) $445,341.09 to Lawyer's Title Insurance Corporation.

9. From the $445,341.09 closing proceeds paid to Lawyer's Title, closing costs totalling $54,048.50 were deducted, leaving net proceeds to the seller (Bart Lincoln Mercury) totalling $391,292.59. These net proceeds were deposited at Bart Lincoln Mercury's checking account at Michigan National Bank, as evidenced by Bart Lincoln Mercury's bank statement.

10. On the day subsequent to the sale of the dealership buildings and real estate, to wit, on October 10, 1979 Bart Lincoln Mercury, by its President, Piscitello, advised Ford Motor Company in writing of Bart Lincoln Mercury's intention to cease all business operations on October 11, 1979.

11. By letter dated October 19, 1979, Ford Motor Company acknowledged receipt of Bart Lincoln Mercury's October 11, 1979 termination correspondence.

12. Having first sent a demand letter on October 18, 1979 to Bart Lincoln Mercury and Piscitello (and Ann Piscitello) for payment of $2,027,358.65 claimed to be due and owing by said persons in conjunction with Ford Motor Credit's vehicle financing, in late 1979, subsequent to Bart Lincoln

Mercury's cessation of operations, Ford Motor Credit Company commenced an action against Bart Lincoln Mercury, Piscitello, Piscitello's then-wife, Ann Piscitello, and another corporation owned by Piscitello, Bart Investment Company, in Wayne County Circuit Court ("Ford Motor Credit litigation") for alleged non-payment of floor-plan financing obligations.

13. In the Ford Motor Credit litigation, Ford Motor Credit Company, in its capacity as an alleged creditor of Bart Lincoln Mercury, moved for a preliminary injunction against Bart Lincoln Mercury and Piscitello, seeking to restrain, *inter alia*, Bart Lincoln Mercury's distribution of assets to Piscitello.

14. Having first held an evidentiary hearing by Order dated February 29, 1980, the Hon. Harry J. Dingeman, Jr. issued an Order Denying Injunction, thereby refusing to impose the restraints on transfer of assets sought by Ford Motor Credit.

15. In the period January through August, 1980, Ford Motor Credit, in its capacity as a secured creditor of Bart Lincoln Mercury, sold dealership automobiles belonging to Bart Lincoln Mercury, applying the proceeds of said sale(s) to reduce the debt balance owed by Bart Lincoln (and its guarantor Piscitello) to Ford Motor Credit under the previous floor-plan financing arrangement.

16. At the time of the October, 1979 termination of operations of Bart Lincoln Mercury, Piscitello was involved in divorce proceedings with Defendant Ann Piscitello. Said proceedings had been commenced in 1978 in Wayne County Circuit Court.

17. In the course of the referenced divorce proceedings, several Orders were issued by the Court relating to monies on deposit in Bart Lincoln Mercury's bank account at Michigan National Bank of Detroit ("Michigan National Bank").

18. Pursuant to the orders of the divorce court, $310,000 from the Bart Lincoln

Mercury bank account was deposited in Ann Piscitello's attorney's client trust account, and later transferred to an escrow account at Michigan National Bank.

19. Thereafter, Michigan National Bank, as escrow agent, began making monthly payments of $1,722.22 to Ann Piscitello from said escrow account, as required by the judgment of divorce.[1]

20. Approximately one and one half years after closing Bart Lincoln Mercury and subsequent to the finalization of his divorce, Piscitello approached Michigan National Bank for a working capital loan to establish another automobile dealership, to be known as "Bart Chrysler Plymouth, Inc.".

21. As part of his proposed loan discussions, Piscitello provided the Bank, *inter alia*, a financial statement dated May 2, 1981.

22. In the course of negotiating the terms of said loan, Michigan National Bank became aware of the still-pending Ford Motor Credit litigation against Piscitello. Accordingly, as a condition of closing the loan, the Bank's counsel requested opinion letters from Piscitello's (i) counsel representing Piscitello at the loan closing (William Brashear) and (ii) counsel representing Piscitello in said Ford Motor Credit litigation (John Boghosian).

23. On May 15, 1981, a loan closing was held whereat Piscitello borrowed the sum of $250,000 from Michigan National Bank, secured, *inter alia*, by Piscitello's assignment to the Bank, as security, of Piscitello's right, title and interest in the $310,000 escrow account being held by the Bank to fund Piscitello's divorce settlement with Ann Piscitello.

24. Piscitello's counsel provided the Bank, at the loan closing, with opinion letters on the then-pending Ford Motor Credit litigation against Piscitello.

25. Approximately one year and two months after his initial borrowing from

---

1. Paragraphs 16 through 19 are this court's summary of paragraphs 16 through 25 of the parties' stipulation.

Michigan National Bank, to wit, on July 30, 1982, Piscitello borrowed additional sums from the Bank, again secured by a pledge of Piscitello's interest in the escrow account being used to fund Piscitello's divorce.

26. At the time of said July 30, 1982 borrowing, the Bank procured from Piscitello's counsel (John Boghosian) an additional opinion letter relative to the Ford Credit litigation.

27. On January 13, 1983 Piscitello's note to the Bank was amended, but said amendment did not relate to the Bank's claimed security interest in the escrow account.

28. On April 1, 1983 a new $450,000 promissory note was executed and delivered by Piscitello to the Bank, said borrowing continuing to be secured by Piscitello's prior assignment of his interest in the divorce escrow account.

29. On May 31, 1984, Piscitello executed a $401,250.00 promissory note, again continuing to be secured by the earlier assignment of his interest in divorce escrow account.

30. In conjunction with the May 1981 Piscitello loan closing, the Bank's attorney, Sanford Passer, provided the Bank with his own opinion letter.

31. On August 14, 1984 Bart Lincoln Mercury and Piscitello (together with another company owned by Piscitello known as "Bart Investment Company") filed voluntary petitions under Chapter 7 of the U.S. Bankruptcy Code.

32. On October 17, 1984, Michigan National Bank filed a petition with the U.S. Bankruptcy Court for relief from the automatic stay attending the Chapter 7 filings, seeking to foreclose its security interest in Piscitello's interest in the escrowed funds pledged to the bank to secure Piscitello's several borrowings.

33. On November 21, 1984, the Trustee in bankruptcy, Paul Borock, commenced an adversary proceeding against Michigan National Bank and Ann Piscitello, claiming that the escrowed funds previously pledged by Piscitello to secure his borrowings at Michigan National Bank represented the proceeds of a fraudulent conveyance.

34. On or about April 1, 1985, Ford Motor Credit Company filed a Proof of Claim in the amount of $862,882.22.

35. In mid–1985, acting upon a motion by the Trustee, the U.S. Bankruptcy Court restrained further payments to Ann Piscitello from the escrow account at Michigan National Bank.

## DISCUSSION

This opinion deals solely with the trustee's action against Michigan National Bank (Bank).

The complaint filed by the trustee alleged that Bartolo Piscitello's grant of a security interest in the escrowed funds in favor of Michigan National Bank constituted a fraudulent conveyance of the property of the debtor Bart Lincoln Mercury, and therefore was subject to attack by the trustee.

The trustee no longer argues that the granting of the security interest constituted a fraudulent conveyance, but now contends that Bartolo Piscitello had no "right, title or interest" in the escrow account, and, accordingly, the security agreement which granted the Bank a security interest in Bartolo Piscitello's "right, title and interest" in the escrow fund is not enforceable as to creditors of the debtor by virtue of Michigan Compiled Law § 440.9203 and is therefore avoidable by the trustee pursuant to Section 544(b) of the Bankruptcy Code, 11 U.S.C. § 544(b) (1982).

The following facts are not in dispute. On October 9, 1979, the debtor terminated its dealership activities. The debtor's real estate was sold, and the proceeds of the sale, after payment of outstanding mortgages and closing costs, were deposited in the corporate bank account. Subsequently, Ford Motor Credit Company filed a lawsuit against the debtor corporation to recover approximately two million dollars allegedly due under a floor-plan financing contract. The proceeds in the corporate bank ac-

count, by orders of the State of Michigan Circuit Court for the County of Wayne, in which the divorce action of Bartolo Piscitello and his then wife, Ann Piscitello, was pending, were transferred to the escrow account, which is the subject of this controversy. Thereafter, Bartolo Piscitello obtained a loan from the Bank, and to secure that loan gave the Bank a security interest in all his "right, title and interest" in the escrow account. The Bank when it obtained the security interest was aware of the source of the escrow account funds and the fact that Ford Motor Credit Company had asserted a claim against the debtor corporation, and that the claim was unsatisfied. These facts establish, the trustee contends, that the escrow account consists of corporate funds, and that Bartolo Piscitello had no "right, title and interest" in such funds. The Bank, however, maintains that Bart Lincoln Mercury was dissolved and the escrow fund distributed to Bartolo Piscitello either by virtue of a corporate resolution dated October 3, 1979, or by virtue of the orders entered by the Circuit Court of Michigan in the divorce proceeding of Bartolo and Ann Piscitello; that the escrow fund therefore became property of Bartolo Piscitello; and, therefore, the Bank has a valid security interest in the fund.

■ There is no merit to the contention of the Bank that the debtor corporation was dissolved and its assets distributed pursuant to the October 3, 1979 resolution adopted by the corporation. The sole stockholder and the directors of the corporation pursuant to the October 3rd resolution directed that a plan of liquidation which qualifies under section 337 of the Internal Revenue Code of 1954 be adopted, and that

> ... one or more distributions in redemption of all of the stock of the corporation; except that the corporation may retain cash in a reasonable amount sufficient to meet claims including unascertained or contingent liabilities and expenses, within the meaning of Section 337(a) of the Internal Revenue Code of 1954, as amended, for such period of time as the Board of Directors of the corporation, acting in good faith, may deem necessary or proper.

A Michigan corporation may be dissolved by action of its board and shareholders through adoption of a resolution by the board, submission to and approval of the resolution by a majority of the shareholders, and "[i]f the dissolution is approved a certificate of dissolution shall be executed and filed on behalf of the corporation...." M.C.L. § 450.1804. Dissolution, other than by judicial decree or the expiration of the period of duration stated in the corporation's articles, takes effect when "[a] certificate of dissolution is filed...." M.C.L. § 450.1831. "Title to the corporation's assets remains in the corporation until transferred by it in the corporate name." M.C.L. § 450.1834(b). The resolution was not implemented. A certificate of dissolution was never filed, nor were there any transfers of the corporate assets by the corporation to Bartolo Piscitello. Accordingly, the corporate assets did not become the property of Bartolo Piscitello by virtue of the October 3, 1979 resolution.

■ Nor is there any merit to the Bank's contention that the orders of the circuit court in which the divorce proceeding of Bartolo and Ann Piscitello was pending dissolved the corporation and distributed the assets of the corporation to Bartolo Piscitello. A corporation is dissolved by judicial decree when a court of competent jurisdiction enters an order of dissolution, and a copy of such order is "forwarded to the administrator by the receiver or other person designated by the court." M.C.L. § 450.1831. The court, by order dated November 1, 1979, directed that $355,000 in the corporate bank account be transferred to the client trust account of Buesser, Buesser, Snyder and Blank, the law firm which was representing Ann Piscitello in the divorce proceeding. Thereafter, by order dated February 6, 1980, the circuit court directed that $310,000 in the client trust account be transferred into an escrow

account with Michigan National Bank.[2] The court did not have before it any action to dissolve the corporation and distribute the corporate assets. Nor can the court's orders be reasonably read to have that effect. The transfers directed by the court orders were made solely to assure that the escrow fund would not be dissipated by Bartolo Piscitello. In fact, by its November 1st order, the court expressly recognized that the fund was corporate property when it directed that the money remaining in the corporate bank account and any additional money received by Bart Lincoln Mercury be used "to discharge the reasonable and necessary expenses of the winding up of the business and affairs of Bart Lincoln Mercury, Inc."

■ Since the escrow fund was corporate property when the Bank obtained its security interest and when the corporate bankruptcy proceeding was filed, it is necessary to consider whether the grant of the security interest by Bartolo Piscitello individually in his "right, title and interest" in the corporate fund was a valid grant of the security interest in the fund.

M.C.L. § 440.9203 (1979) provides that a security interest is not enforceable against the debtor or third parties with respect to the collateral and does not attach unless:

(a) The collateral is in the possession of the secured party pursuant to agreement, or the debtor has signed a security agreement which contains a description of the collateral ...; and

(b) value has been given; and

(c) the debtor has rights in the collateral.

The trustee concedes that Piscitello executed a security agreement, that the Bank gave value, and that a financing statement was filed. The trustee, however, contends that Bartolo Piscitello did not have any interest in the corporate fund to which the Bank's security interest could attach, thus the security interest of the Bank is not enforceable against creditors of the debtor, and therefore it is subject to attack by the

trustee pursuant to Section 544 of the Bankruptcy Code, which provides that:

(b) The trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

A stockholder does not "own any part of the corporate capital and has not the legal title to, and is not the owner, or entitled to the possession of, any portion of its property or assets." 11 Fletcher Cyclopedia of the Law of Private Corporations (L. Zandel rev. ed. 1986), § 5100, p. 99 (footnotes omitted). "Stockholders do not own the corporate property, and cannot mortgage, sell, or convey it. The title is in the artificial being called the corporation, not in the stockholders. Such property is not under the control of its stockholders, whether they act separately or collectively." *Rough v. Breitung,* 117 Mich. 48, 54, 75 N.W. 147 (1898). "The assets of a corporation may not be taken by a stockholder or officer to satisfy his individual debts." *Grand Rapids Trust Co. v. Ben Rose Tire Co.,* 264 Mich. 268, 271, 249 N.W. 847 (1933). A stockholder merely has a "right to a proportional part of the dividends and the effects of the corporation when dissolved, after payment of its debts." *First National Bank v. Maine,* 284 U.S. 312, 330, 52 S.Ct. 174, 178, 76 L.Ed. 313 (1932), *ovrld on other grounds, State Tax Comm. v. Aldrich,* 316 U.S. 174, 62 S.Ct. 1008, 86 L.Ed. 1358 (1942). · *See also, Owens v. Commissioner of Internal Revenue,* 568 F.2d 1233, 1238–39 (6th Cir.1977). It is only the "[a]ssets remaining after payment of, or provision for claims against, a corporation" to which a stockholder is entitled. M.C.L. § 450.1855. Since the corporate assets were not distributed to Bartolo Piscitello, nor could they have been without satisfying or providing for the claim of Ford Motor Credit Company, Bartolo Pisci-

---

**2.** The fund had been reduced to $310,000 by virtue of the property settlement payments

made to Mrs. Ann Piscitello pursuant to the judgment of divorce.

tello had no interest in the escrow fund which he could encumber. Accordingly, since the security interest of the Bank did not attach to the escrow fund, it is not enforceable against creditors of the debtor, and it is avoidable by the trustee.

The cases relied upon by the defendant, *Swets Motor Sales, Inc. v. Pruisner*, 236 N.W.2d 299 (S.Ct. Iowa 1975); *Farrand v. Caton*, 69 Mich. 235, 37 N.W. 199 (1888), are clearly distinguishable. In *Swets* and *Caton*, the grantors had a property interest in the collateral to which a security interest could attach. In the instant case, Bartolo Piscitello had no such interest in the escrow fund.

An appropriate order is to be submitted for entry.